## SAMUEL B. PIERCE v. JOHN SPAFFORD.

*Burial Ground, Dedication of for Public Use.    Gen. Sts. c.* 18,
*s.* 2.    (*R. L. ss.* 3192, 3196.)    *Costs.*

1. What acts constitute a dedication: Stating to people living in the vicinity that the ground might be used for a burial place; suffering it to be fenced, and exclusively used for such purpose for a great number of years, lots appropriated, roads made in it, &c.
2. After such dedication the *original owner*, or his *grantees*, have no greater control over the same, for such purposes, than any other lot-holder. The selectmen under the statute, (R. L. c. 147,) can make all necessary regulations ; and convey lots by deed.
3. When one has staked out, and entered into possession of a lot, and not abandoned it, it would be a trespass for another to fence a part of it into his own lot; or, obstruct a road-way necessary for its use.
4. The *damages* were practically *nominal*,—$1 ; therefore, the case as to costs is within the provisions of the R. L. s. 1436, giving the court *discretion* in matter of costs.

THIS case was heard at the May Term, 1880, BARRETT, J., presiding.   The court found that the defendant rightfully removed the stone' post standing in said Dickinson's lot ; to which the plaintiff excepted.   The court further decided that the defendant committed a trespass against the plaintiff in removing the other posts and chains, and adjudged that the plaintiff recover of the defendant the sum found by the referee, one dollar, regarding the same as nominal damages, and one half of the referee's fees [being three dollars] not paid by the State, as his costs, and for no other costs.   To this decision of the court the defendant excepted. The plaintiff claimed to recover full costs taxed at $23.91 before the County Court, and $20.73 before the referee.   Said allowance of costs and disallowance of full costs was made on motion of defendant ; to which allowance of full costs the plaintiff excepted.

Case heard upon the report of referee, who, among other things not material, found :

George Potwine, Jr., owned a farm, including the whole of the burying ground, and about the year 1825 he said to persons

living near him, but to what persons did not appear, that if the people would fence off this lot, it might be kept and used for a burying ground. Thereupon the persons living in that vicinity turned out with their teams and fenced off this lot from the rest of the farm of said Potwine. It did not appear who thus assisted except the names of a few men given, and it also appeared that others besides those whose names appeared assisted in this work. Said yard was thus fully fenced off all around, and has ever since thus been exclusively used for a burying ground.

About 1852 the people of that vicinity removed the old wall on the side of the yard next to the highway, and laid up a new bank wall in its place, and graded somewhat back of the wall. A portion of the neighbors worked there, and the balance of the expense was borne by subscription. A new fence and gate was erected at some time, and the expense borne in the same way.

A year or so ago further repairs were made to the gate and fence; and people in that vicinity gave something towards the same. These last repairs were made by defendant; and the small sums given were given defendant or his wife to be used towards said repairs.

Some lots were taken up and fenced early, and some have been lately; and defendant has a lot there, and the same indicated on plans by the names of Hemenway and Spafford, which is fenced in by curbing. It did not appear that any deeds were ever taken of said lots, or that anything ever was paid for the same, except as herein stated. About the year 1842, the defendant purchased land adjoining said burying ground, and ever since then has had the general charge of the yard or ground. He has buried all those interred therein during that time with the exception of five or six. He has allotted and sold off lots to those who applied to him, taking pay therefor. He has buried persons who have never had any lots. He has been paid for some; but has during the time buried twenty-one poor persons without pay, either for his services or land used. It did not appear that any one ever was denied burial in this yard. . . . . .

I find that when defendant took his deed this yard was fenced off by itself, and used exclusively for a burying ground or yard, and this was known to defendant. It did not appear that after said land was fenced off in 1825 for the purpose of being used for burial purposes, the said Potwine ever claimed any right to said burial ground or yard, unless it was to a lot therein, and the said Hiram Spafford never did any act in or upon said yard. The only act that said Hemenway did in reference to said yard, so far as appeared before the referee, was that, while he owned the land

north of said yard included in the deed from Hiram Spafford to him, he the said Hemenway moved the wall at the northwest corner of said burying ground further into said yard, so as to afford him a better drive-way into his said land from the highway.

Defendant claimed title by prescription. All the acts of possession defendant ever exercised are above stated, and are such as usually are performed by persons acting as sextons. He has buried all the people buried there since 1842 except five or six. He has assisted, with the others living in that vicinity, in the expenses of keeping up the fences about the yard. He has done more or less each year by cutting the bushes and keeping the yard trimmed up ; and persons owning lots there have done the same to some extent ; but not so much as the defendant has done. He has allotted and sold lots, but has never conveyed any except two, and those were within the past five years ; and as to whether these acts were such acts as, under the circumstances, would give the defendant title, is submitted to the court.

I find that defendant has used all the money received for lots and from subscription in and upon the yard, and that he has done much on the yard over and above what the sums thus received would compensate him-for.

In the year 1851 plaintiff's father died, and he was buried by defendant. Previous to that, and in 1838, a sister of the plaintiff was buried in said yard at a place selected by some member of the family, and defendant had nothing to do therewith ; nor had the plaintiff. . . . . A brother of plaintiff was buried by defendant in the year 1856. Plaintiff's wife died February 13, 1879, and he was at the yard selecting a place for her burial when defendant came there. Plaintiff proposed to bury her beside his sister, but defendant objected on account of its filling up the road, and she was buried below there and in a line with the grave of plaintiff's father ; but subsequently, in 1879, without defendant's knowledge or consent, was moved up beside the grave of plaintiff's sister, and to the place marked on the plan 4. Subsequently plaintiff inclosed a lot including the graves of his father, sister, brother and wife, and other land, enough, he thought, for his family ; and no claim was made that the lot was too large for the plaintiff's family,—by erecting four stone posts at the four corners, and hanging chains thereon. The inclosure of the lot was made without defendant's knowledge.

The defendant in 1863 sold and allotted a lot to a Mr. Dickinson, but never gave Mr. Dickinson any deed or paper title thereto ; and buried a son of Mr. Dickinson thereon, and subsequently buried thereon another of Mr. Dickinson's family. Mr. Dickin-

son paid the defendant for the lot ; and the defendant staked the same out and kept up marks so he knew the boundary of the lot. When plaintiff inclosed his lot he inclosed a portion of the Dickinson lot. The Dickinson lot was not thus fenced, and the stakes placed there by defendant to mark said lot were not there, but had either been removed or decayed away. Dickinson called on defendant to clear the lot he had sold him. Defendant thereupon wrote to the plaintiff to remove the posts and chains, notifying him that if he did not, he, the defendant, should remove them, saying that they interfered with the Dickinson lot, and the road through said yard. Plaintiff received the letter, but did not remove the posts or chains, and after waiting a reasonable time, defendant removed said posts and chains, doing no unnecessary damage. The northeast post was on the Dickinson lot. The southeast post was in the road through said yard, and obstructed the same. The southwest post was on land unoccupied, and the northwest post was at the corner of a lot occupied by one Davis. I find that as shown by the plan it was originally intended to have a road into said lot with a place in the lot in which to turn round ; and said road has been kept so except the two graves in the plaintiff's and a grave shown on the plan south of the lot ; but until plaintiff inclosed said lot the road could be used, and a team turned around. After the plaintiff inclosed the lot this could not be done, as the fence obstructed it. Potwine deeded to Hiram Spafford ; Spafford to Hemenway ; Hemenway to defendant.

 Gilbert A. Davis, for the plaintiff.

The dedication may be done on a single day. *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407. The dedication need not be by deed, but may be by some act clearly indicating an intention to dedicate. *Abbott* v. *Mills*, 3 Vt. 521 ; *State* v. *Wilkins*, 2 Vt. 480 ; 3 Cush. 290 ; 6 Peters, 431 ; 10 Peters, 662. Here is dedication and *acceptance*. *Morse* v. *Ranno*, 32 Vt. 600 ; 39 Vt. 558. Dedication may be established by possession. *Prouty* v. *Bell*, 44 Vt. 73 ; 11 East, 376 and note. Dickinson did not make the defendant his agent. He had no " color of title " to give him constructive possession. There must be *visible boundary* lines. *Shedd* v. *Powers*, 28 Vt. 655 ; *Wood* v. *Willard*, 37 Vt. 382.

*Wm. M. Pingree,* for the defendant.

What right had the plaintiff in the burial ground ? He was not one of the original proprietors, nor was his father ; never did anything about building or repairing the fence or otherwise in improving the ground ; never purchased a right or lot.   To whom was the land given ?   To such persons residing in the vicinity as would fence it.   If they took a fee they were at first tenants in common of the whole land.   After the lots were drawn, each proprietor had his lot in severalty, and the unallotted land as tenants in common.

If the gift of Potwine did not convey the fee of the land, but a right to the donees to bury there and to have the enclosed land used only as a burial ground, then the fee of the land remained in him, and his title passed to the defendant to use the land for the purposes designed, subject to the rights of the proprietors of the lots ; the unallotted land would be at the disposal of the defendant.   *Wait* v. *Richardson et al.,* 33 Vt. 190 ; Roberts's Dig. 673, 672 ; *Beach* v. *Haynes,* 12 Vt. 21 ; *Pomeroy* v. *Mills,* 3 Ib. 279.

The opinion of the court was delivered by

VEAZEY, J.   The report of the referee clearly shows a dedication by Potwine in about 1825, of the land then fenced out from his farm for the purpose of a burial ground.   The intent to make a dedication, the fact of making it, the acceptance and appropriation for the purpose intended, are fully found.   Nothing appears to show that Potwine reserved any right to the yard in respect as to its control and management for burial purposes, while it should be used for such purposes, different from what every other person had who took up and appropriated a lot therein.   No question is necessarily involved in this case as to who does or would own the fee in the event that the dead there buried should be removed and the enclosed land abandoned as a burial ground.   It was in use as dedicated for a burial place or grave yard when the defendant took his deed of the farm out of which it had originally been taken ; and it has continued to be so used ever since.   We do

not regard it as a dedication to the use of those only who helped fence the yard in the first instance, or who first appropriated lots therein. There is nothing to show that such was the intention or understanding of Mr. Potwine, or others who took lots; on the other hand, we think the report shows that he and the others and the public understood that it was a dedication for the public generally who would be accommodated by it as a burial place. It has been so treated and used for more than fifty years. Persons having no lots have been buried there; and no one was ever denied burial there. When persons who had taken a lot moved away before having occasion to bury in it, others have stepped in and appropriated the same lot. It is and always has been since its dedication a public burial ground. Therefore the selectmen had the right under the statute, (Gen. Sts. ch. 18, sec. 2,) to make all necessary regulations concerning it; and since 1864, they could have granted and conveyed by deed lots therein. Acts of 1864, No. 76. It does not however appear that they have ever assumed any control over, or management of, the yard. Whatever has been done to keep it in suitable condition has been by the voluntary contribution and work of individuals in that vicinity. The defendant has been the most active in this respect, and has assumed to be the general manager of the premises. He claims that the yard was embraced in his deed of the farm, and that he had the right under his deed to designate and sell lots not before appropriated, and to keep the road-way into and through the yard unobstructed; and in any event, he and all other rightful lot-holders were tenants in common of the unappropriated land and road-way.

These claims cannot be sustained to the full extent. The claim of title by prescription made before the referee is not pressed in argument here. It is immaterial whether the description of the defendant's deed covered this land or not. The dedication being for the purpose and of the character above set forth, the defendant had and has no greater or different right in the yard while in use as dedicated than any other holder of a lot therein, so far as pertains to the management of the yard or the disposal of lots. His assumption of such right could not create it. By appropri-

ating a lot a person gained no right in the unappropriated land. A proper road-way having been laid out through the yard when it was first dedicated and allotted, and the same being necessary to a convenient use of the lots, the lot-holders are entitled to use such roadway for the purpose designed by it, and no one has a right to obstruct it, or to appropriate it for any other use. Therefore any lot-holder having occasion to pass over the road to his lot and finding an obstruction in his way, might remove it. But in the absence of all regulations by the selectmen or any other lawful authority, no one had any general right to regulate such road-way. The defendant's general conduct in regard to this yard is worthy of commendation, but it did not create in him legal rights different from those of other lot-holders.

Judging from the original plan of the yard, it would seem that Dickinson appropriated a part of this road-way for his lot; but the referee has not so found the fact; and so far as appears in this case, we must assume that Dickinson did not invade the road-way by the appropriation he made. He had the same right to repel a trespasser upon his lot that other lot-holders had upon their lots. A person having staked out a lot and entered into possession of it and not abandoned it, thereby obtained such an interest and possession as would enable him to defend it against an appropriation by another person. Dickinson therefore had the right to remove the post which the plaintiff put upon his lot. The fact that the stakes originally placed at the corners of Dickinson's lot had in the course of time rotted down or been removed, and that the plaintiff did not know the exact extent of Dickinson's lot, would not, in view of what he must have known about Dickinson's occupancy, and in view of all the facts reported, give the plaintiff the right to invade what Dickinson had actually and properly taken as a lot. And upon being notified that he had got on to Dickinson's lot, and that he must take away his post and fence, he should have taken them away. Dickinson having the right to remove the post on his lot, could and did authorize the defendant to remove it for him. The defendant, acting under the authority of Dickinson, may stand on Dickinson's right. The fact that both parties acted under the erroneous assumption that it was the defendant's duty

to remove the post and chains, would not destroy the defendant's right to depend on Dickinson's right. Dickinson having the right to remove the post, could not direct the defendant to remove it without conferring upon him all the right that the former had in this respect. The plaintiff was a wrong doer by putting the post in the road way, but by so doing and hanging his chains thereon. and about the lot, he took possession thereof, and can maintain trespass against the defendant, who had no right for interference therewith. *Fletcher* v. *Cole*, 26 Vt. 170. Defendant did not remove that post because it obstructed him or Dickinson in the reasonable use of their own lots. Upon the foregoing views the defendant had no right to remove the other two posts.

The case is peculiar, and the law which governs rights resting in dedication is anomalous, but the general principles are well established by the cases cited by counsel from our own reports and elsewhere. See especially, *City of Cincinnati* v. *The Lessees of White*, 6 Peters's Rep. 431 ; *Hunter* v. *The Trustees of Sandy Hill*, 6 Hill's Rep. 407. In the latter case the court point out the distinction between a dedication for a highway and a graveyard, as to the right of the person making the dedication in the land dedicated while in use for the purpose designed. In this case we think, as before stated, that it was a dedication of the whole land enclosed for a public burial ground, without any reserved rights therein, as to disposition of lots or general management, while it should be so used ; and that such was the plain intention of Mr. Potwine. Whether he or his grantees had any right to the grass or fruit that may have grown on the unappropriated part, or a right to cultivate that part, so far as it could be done without interference with a reasonable use of the yard for burial purposes, is a question not involved in this case and not decided.

We discover no error in the disposition of the question of costs by the County Court. The suit was brought to determine the rights of the parties upon the land in question. The damages were practically nominal, and were so found by the referee and treated by the court. The case is therefore within the provisions of section 18, ch. 33, Gen. Sts. In *Sumner* v. *Cummings et al.*, 23 Vt. 434, REDFIELD, J., says :—" We do not understand that

the matter of costs is one upon which courts have no discretion. We understand, in all cases, it is discretionary, to some extent, in what form, and to what extent, to tax costs."

Judgment affirmed.