# Richmond.

## BENN v. HATCHER AND ALS.

### APRIL 30th, 1885.

1. CONSTRUCTION OF DEEDS—*Reservation—Uncertainty.*—Uncertainty in reservation, as when in conveyance of land the language is—"reserving to the parties of the first part, three-fourths of an acre as a burying-ground for the family and their descendants," may be cured by the election of the grantor; which, however, must be made within a reasonable time, but may be by acts *in pais.*

2. IDEM—*Estoppel—Dedication.*—Where land has been reserved and "dedicated" to some public, charitable or pious use, an estoppel arises precluding the owner from revoking the dedication; especially is such dedication irrevocable where it was created by agreement.

3. IDEM—*Burial-grounds—Later conveyances.*—When such dedication is once made, no title passes to the dedicated ground by subsequent conveyances of the tract out of which the reservation was made, though those conveyances be without reservation.

4. PRACTICE AT COMMON LAW—*Variance.*—Declaration describes the land in controversy as lying north of a road, and the verdict as south of that road. In other particulars the description is the same. Such variance is immaterial, and the description in the declaration must be presumed to be mistaken.

    *Koiner* v. *Rankin's Heirs*, 11 Gratt. 420.

5. IDEM—*Instructions—Rule.*—In every case where objection is made to an instruction of the lower court, the first inquiry, is whether the jury were misled; and this can be determined only by an inspection of the instruction as a whole, taken in connection with the pleadings and the evidence. And if, when so construed, it appears probable that the jury were not misled, the judgment will not be reversed, although the instruction in some of its parts may not be strictly correct. Tested by this rule, the instructions given by the court to the jury in the case at bar, is not erroneous.

VOL. LXXXI—4

6. IDEM—*New trials—Rule.*—It is a settled. rule that where some evidence has been given tending to establish the fact in issue, a new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. It is also a rule that to justify the granting of a new trial on the ground that the damages are excessive, the verdict must be so out of the way as to evince in the jury passion, prejudice, partiality or corruption. These rules prevail *a fortiori* in an appellate court.

7. IDEM—*Attachments—Affidavits.*—The affidavit whereon an attachment is issued in a pending suit under Code 1873, chapter 148, section 2, need not describe the affiant as the plaintiff, or as the agent, or as the attorney in fact of the plaintiff.

8. CASES REVIEWED AND COMPARED.—*Butcher* v. *Creel,* 9 Gratt. 201, is not at variance with the doctrine laid down in the first paragraph of the syllabus in this case.

Error to judgment of circuit court of Goochland county, rendered April 7th, 1883, in an action of ejectment, wherein Mary E. Hatcher and others were plaintiffs, and Benjamin T. Benn was defendant.

The plaintiffs owned a tract of 413¾ acres of land on Beaver Dam in said county, and in 1851 granted it to John T. Sublett, "reserving to the parties of the first part three-fourths of an acre as a burying-ground for the family and their descendants." The land reserved had been dedicated for that purpose many years. After several intermediate conveyances the part of the said tract on which the burying-ground lay passed, in 1871, to James H. Bowles, who, in 1872, conveyed it to the appellant. In none of the deeds since that to Sublett in 1851, was there any clause of reservation. Benn cut down the trees, &c., growing on the burying-ground, removed the stones that marked the graves, and the brick wall surrounding one grave, enclosed the ground and used it to pen his hogs on it, and finally plowed it up, saying "he wished to wipe out the spot." Afterwards he refused to permit one of the family to be buried there. The plaintiffs, some of whom were grantors in the deed to Sublett, and the land having passed back to them,

were also grantors in the deed to Bowles, which was without such reservation, and all of whom were members or descendants of the family, instituted the action of ejectment against Benn to recover the three-fourths of an acre of land, and also $1,000.00 damages.

The jury rendered a verdict for the land claimed and $500 damages. Instructions were given at the trial. The defendant demurred to the plaintiffs' evidence, and moved to set aside the verdict as contrary to the law and evidence. The circuit court overruled the motion, and rendered judgment in accordance with the verdict; to which rulings the defendant excepted, and obtained from one of the judges of this court a writ of error and *supersedeas*.

*Wm. B. Pettitt* and *A. C. Leake*, for the plaintiff in error.

*Benjamin Nash* and *Jackson Guy*, for the defendants in error.

LEWIS, P. delivered the opinion of the court.

This was an action of ejectment in the circuit court of Goochland county. The case is as follows: By deed bearing date August 19, 1851, the widow and the children and devisees of Josiah Hatcher, deceased, conveyed to John T. Sublett a certain tract of land, situate in the said county, "reserving to the parties of the first part three-fourths of an acre as a burying-ground for the family and their descendants." The lot of ground thus excepted is the subject of this controversy. In the following year Sublett and wife conveyed the land to David A. and Frank J. Hatcher, two of the nine grantors in the first mentioned deed, and by intermediate conveyances it is now owned by the plaintiff in error, who was the defendant in the court below. In none of these subsequent conveyances, how-

ever, is there any reservation of the burying-ground, or any reference to the exception in the deed of August 19, 1851.

At the trial the defendant demurred to the evidence, and thereupon the jury returned a verdict for the plaintiffs, subject to the opinion of the court on the demurrer, and assessed their damage at the sum of $500. Judgment was rendered in accordance with the verdict, and thereupon the defendant was allowed a writ of error and *supersedeas.*

The first objection urged by the latter is that the exception in the deed to Sublett is void for uncertainty. But this objection is not well founded. It is well settled that in such case the uncertainty may be cured by the election of the grantor, which, however, must be made within a reasonable time.

In *Dygert* v. *Matthews,* 11 Wend. 35, a deed was made conveying fifty acres of land, "reserving out of the said parcel of land so much as is necessary for the use of a grist-mill," etc. The court said that strictly an exception of a part of the *thing* granted is void, but an incident to the grant may be reserved. Therefore "this exception, as such, assuming it to be an attempt to reserve out of the grant one acre of land, is void; but construing it as a reservation of a mill site, which is the obvious intent of it, it is valid, but inoperative until used for the purposes reserved." And further it said: "Until the right is exercised and the grist-mill built, it cannot be ascertained with certainty what quantity of land will be necessary for that purpose, nor the precise location."

Nor is there anything at variance with what is here said in the decision of this court in *Butcher* v. *Creel's heirs,* 9 Gratt. 201, to which counsel have referred. In that case, it is true, the exception relied on was held inoperative, but not solely on the ground that the land intended to be excepted was not sufficiently described in the deed; for the court went on to say that if it might be identified by entry and taking possession, yet,

as no such entry had been made, the action could not be maintained.

In the present case there is no doubt as to the precise three-fourths of an acre intended to be excepted. The evidence shows that long prior to the death of Josiah Hatcher, it had been set apart as a family burying-ground; that the whole, in course of time, became covered with cedars, bushes and other natural growth of the soil; that it was not more than seventy-five yards distant from the defendant's dwelling-house, and that its boundaries were plainly defined and unmistakable. It also appears that it was in the uninterrupted possession of the family for the purpose for which it had been set apart, until the defendant refused to permit the body of a deceased member of the family to be buried there, in the summer of 1882, a short time prior to the institution of the present suit. And this testimony was properly admitted as explanatory of the deed, and to give effect to the intention of the parties. 1 Greenl. on Ev. section 275 *et seq.; Altman* v. *McBride,* 4 Strob. 208; *Worthington* v. *Hylyer,* 4 Mass. 196; *Wiley* v. *Sirdorous,* 41 Iowa, 224.

This being so, the plaintiffs contend that the lot in question was dedicated to the use expressed in the deed, and that this quality adhered to it, and was not affected by any subsequent alienation. In its technical legal sense dedication is the appropriation of land for a public use, as for a highway, a common, or the like, but may be effectual, it seems, when made to a pious or charitable use, though not distinctively a a public one. . It is not necessary that it should be by deed or in writing; it may be by act *in pais;* nor is it necessary that the fee should pass; for dedication has respect to the possession, and not the permanent estate. And where property is thus set apart an estoppel arises which precludes the owner from revoking the dedication; for the law considers that it would be in violation of good faith, and in some instances even sacrilegious,

to reclaim at pleasure property which has been devoted to the use of the public, or in furtherance of some charitable or pious object. *Beatty* v. *Kurtz*, 2 Pet. 566; *Cincinnati* v. *White's Lessee*, 6 Ld. 431; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill (N. Y.), 407; 3 Washburn on Real Property, marg. p. 459.

The present case stands on even higher ground. It stands on the solemn agreement of the parties themselves, that the lot in question should not only be excepted out of the deed to Sublett, but that it should be devoted, in the future, as it had been in the past, to the use of the family as a place of burial for its dead. And the appropriation thus made was not for the separate use of the individuals respectively, who composed the family at the time, but for the family as a whole, and could not be relinquished or assigned, in whole or in part, except by the concurrent act of all for whose benefit it was intended. It follows, therefore, that no title to the premises in controversy was acquired by any of the conveyances subsequent to the deed to Sublett. *Pearson* v. *Hartman*, 100 Penn. St., 84; *Pierce* v. Spafford, 53 Vt. 394.

It is next insisted by the defendant that the verdict ought to have been set aside on the ground of variance between the declaration and the verdict in respect to the description of the premises. In the declaration the land is described as lying on the north side of the Whitehall road, while in the verdict it is described as lying on the south side of that road. But in all other essential particulars the description in the declaration is minutely followed in the verdict, and we must, therefore, presume that the description in the declaration is a mistaken one, and that the plaintiffs have recovered the land described therein, though by a different and corrected description. *Koiner* v. *Rankin's heirs*, 11 Gratt. 420.

At the trial both the plaintiffs and the defendant requested certain instructions to be given to the jury; but the court

refused to give the instructions asked for by either side, and in lieu thereof instructed the jury as follows: "The jury are instructed that in their assessment of damages they should allow the plaintiffs such sum of money, not exceeding $1,000 [the sum claimed in the declaration], as from a consideration of all the evidence the jury may believe to be a reasonable estimate for the expense of restoring the premises to the purpose for which they had been dedicated as a family burying-ground, and of replacing, as far as may be practicable, the trees and shrubbery and marks of graves, such as head or foot stones, or walls around the same." This instruction, the defendant contends, is vague and otherwise erroneous. And it may be true that in some of its parts, taken abstractly and disconnectedly, it is obnoxious to the objections which are urged against it. But in every case where objection is made to an instruction of the lower court, the first point of enquiry is, whether the jury were misled; and this can be determined only by an inspection of the instruction as a whole, taken in connection with the pleadings and the evidence. And if when so construed it appear probable that the jury were not misled, the judgment will not be reversed, although the instructions in some of its parts may not be strictly correct. Thompson on Charging the Jury, section 131, and cases cited.

Tested by this rule there is no error in the instruction which was given. Naturally the plaintiff's claim was not for profits, and therefore no statement was filed with the declaration under section 30 of chapter 131 of the Code of 1873 ; but damages were claimed, which, under section 7 of the same chapter, may be stated in the declaration. This being so, the measure of damages, according to the theory of the instruction, was the sum necessary to defray the cost of restoring the premises to the purpose for which they had been dedicated. There is not the remotest intimation that the plaintiffs were entitled to

recover punitive damages. On the contrary, such an idea is plainly negatived by any reasonable construction of the language employed. And what was meant by restoring the premises to their former condition is explained by the language immediately following, namely, to replace, " as far as may now be practicable, the trees and shrubbery and marks of graves, such as head or foot stones, or walls around the same." It is true only one of the graves was enclosed, and that by a brick wall, a portion of which was knocked down by a falling tree, after which the whole was taken down by the defendant, and the bricks removed to his dwelling.

It is also true that, strictly speaking, there was no shrubbery on the premises, and that except the periwinkle that grew on the graves, there was nothing but cedars and other natural growth of the soil. But it is unreasonable to suppose, in view of the evidence, which was not conflicting, that the jury were misled by anything contained in the instruction which was given.

The evidence shows that after defendant came into possession of the land he cleared off the burying-ground, cutting down the cedars and other growth, and removing the stones that marked the graves. It also shows that the whole was for a time enclosed as a hog pen, and was afterwards ploughed up, and all indications of a grave-yard removed, with a view, as the defendant said, " to wipe the place out." And that such was his determination is shown by his refusal to permit the burial therein of Richard Hatcher's remains in the summer of 1882, and his threat to shoot the man who would undertake to dig a grave upon the premises. These facts are established by the uncontradicted testimony of numerous witnesses, one of whom, in answer to a question as to whether he would undertake to restore the grave-yard to its former condition for one thousand dollars, replied that he would not like to undertake

it at any price; that to restore it one would have to go there and unearth the bodies and identify them, and replace the head and foot stones at each grave, and each tree and shrub cut down and removed by the defendant.

Such, substantially, was the evidence upon which the jury found for the plaintiffs; and we cannot say that upon a new trial the result would probably be different, or more favorable to the defendant. But apart from this, it is well settled by the decisions of this court, too numerous and familiar to require citation, that where some evidence has been given tending to establish the fact in issue, a new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. It has been held that to justify the granting of a new trial on the ground that the damages awarded are excessive, the verdict must be so out of the way as to evince passion, prejudice, partiality or corruption in the jury. 4 Min. Insts. 757, and cases cited. 'And this rule *a fortiori* prevails in an appellate court. Hence, as was said in *Hill's Case*, 2 Gratt. 595, and repeatedly reaffirmed, where a case depends upon the tendency and weight of evidence, and the jury and judge who tried the cause concur in the weight and influence to be given to the evidence, it would be an abuse to the appellate powers of this court to set aside a verdict and judgment, because the judges of this court, from the evidence as it is written down, would not have concurred in the verdict. *Blosser* v. *Harshbarger*, 21 Gratt. 214, and cases cited.

In the light of these principles it cannot be said that the verdict is contrary to the evidence, or is so plainly wrong in respect to the amount of damages awarded, as to justify this court in setting it aside; and the remaining question is, whether the motion to abate the attachment was properly overruled.

The attachment was issued after the institution of the suit, founded on the affidavit of Geo. S. Vashon, Jr., who was not a

party to the suit, and who is not described as an agent or
attorney in fact of the plaintiffs.    It was issued under section 2
of chapter 148 of the Code, which enacts that "on affidavit at
the time of or after the institution of any suit that the plain-
tiff's claim is believed to be just * * * and * * also that the
affiant believes that the defendant is removing or intends to
remove * * his * estate, or the proceeds of the sale of his
property, or a material part of such estate or proceeds out of
this State, so that process of execution on a judgment in said
suit, when it is obtained, will be unavailing, in any such case
the clerk shall issue an attachment," etc.    The defendant
insists that it not appearing that the affiant in this case was
the agent of the plaintiffs, the affidavit is fatally defective, and
that the motion to abate the attachment ought to have been
granted.

It is very true, as counsel have argued, that attachment is a
harsh and statutory remedy unknown to the common law, and
that all the requirements of the statute must be strictly complied
with.    Indeed, such compliance is essential to the jurisdiction of
the court.    *Jones & Ford.* v. *Anderson,* 7 Leigh, 308.    This is not
denied.    But it is equally true that the intention of the legis-
lature is to be gathered from the language it has seen fit to
employ, and that it is not for the courts to add to the statute
any more than to ignore that which is plainly expressed.
Every case must, therefore, be governed by the terms of the
statute under which it arises, independently of decisions founded
upon other statutes of similar character, but of different phra-
seology.    It is a general rule of construction that where the
language of a statute to be construed is plain, it must be
adhered to, and cannot be departed from on the mere conjec-
ture that the legislature meant something more or less than it
has deliberately said; or, as expressed by the Supreme Court
of the United States in a late case, "where the language of a

statute is transparent, and its meaning clear, there is no room for the office of construction. There should be no construction where there is nothing to construe." *Lewis, Trustee,* v. *United States,* 92 U. S. 618.

Applying this rule to the present case, we are of opinion that the motion to abate the attachment was properly denied. The statute in its terms is plain and unambiguous. It does not require that the affidavit shall be made by the plaintiff himself, or by his authorized agent. It does not require that the affidavit shall be filed. All it requires is that affidavit shall be made. Its language is: "On affidavit, at the time or after the institution of the suit, * * * the clerk shall issue an attachment," etc. Under this section it was held in *Clafflin* v. *Steenbock,* 18 Gratt. 842, that the affidavit may be made by the plaintiff's agent. And if it may be made by an agent, why, under the comprehensive terms of the section, may it not be made by any person who has knowledge of the facts which entitle the plaintiff to sue out an attachment? That it may be made by such person is apparent, we think, from the language of the sections immediately following. Thus, by the third section it is enacted that on complaint to a justice that a debtor is removing, or intends to remove, his effects out of the State, etc., an attachment shall be issued by the justice, provided the plaintiff, or his agent, shall make oath to the truth of the complaint, etc. And so the fourth section provides that to entitle a landlord to sue out an attachment against his lessee for rent, the complaint shall be verified by the oath of the lessor or his agent.

Now, it cannot be supposed that the legislature would have been thus careful in these sections to expressly require the affidavit to be made by the plaintiff or his agent, if the previous sections were intended to have the restricted operation contended for in the present case. On the contrary, the con-

clusion is irresistible that these express restrictions exclude the idea that the right to sue out an attachment is confined to the same narrow limits by the provisions of the second section under which the attachment in the present case was issued.

This sufficiently disposes of all the questions arising in the case, and the result is that the judgment must be affirmed.

FAUNTLEROY J., dissented.

JUDGMENT AFFIRMED.