## �export𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

COMMONWEALTH V. LUCAS.

|84 303|
|92 631|

JANUARY 12th, 1888.

1. LICENSE—*Broker—Tax-receivable coupons—Indictment.*—Section 65 of Acts 1883–84 makes it an offence to do business as a tax-receivable coupon broker without a license. Sections 50 and 60 of same act make it an offence to do business as a stock-broker without license. These two offences are widely different. The former offence cannot be punished under an indictment charging the latter offence.

2. IDEM—*Indictment.*—The offence of selling tax-receivable coupons under section 65 is not charged by an indictment alleging that defendant " did deal in certificates of debt commonly called ' Virginia coupons,' * * * without license under sections 58 and 60 of the act of assembly * * * for the years 1883 and 1884, page 588," as the court must take cognizance that there are Virginia coupons outstanding that are not tax-receivable.

3. IDEM—*Instructions.*—Instruction which is inappropriate to the offence charged in the indictment is improper, and should not be given.

4. IDEM—*Harmless error.*—Where the party appealing has not been prejudiced by an instruction (inasmuch as the verdict is right), this court will not reverse the judgment.

Error to judgment of circuit court of city of Richmond, rendered February 15th, 1887, on an indictment against Robert T. Lucas for a violation of the revenue laws. The verdict was for the defendant and the judgment was entered accordingly. To this judgment the commonwealth obtained a writ of error. Opinion states the case.

*Attorney-General R. A. Ayers,* for the commonwealth.

*A. B. Guigon,* for the defendant in error.

LEWIS, P., delivered the opinion of the court.

This was a prosecution in the corporation court of the city of Alexandria against the defendant, Lucas, for a violation of the revenue laws. The indictment contains four counts. The first charges that the defendant in the month of November, 1886, "did conduct the business of *a stockbroker,* in the said city, without first having obtained a license therefor, as required by sections 58 and 60 of the act of assembly, as set forth in the Acts of Assembly for the years 1883. and 1884, page 588." The second charges that the defendant, during the month of November, 1886, in the said city, "did deal in certificates of debt, commonly known and called 'Virginia coupons,' without first having obtained a license therefor, as required by the laws of the State of Virginia, set forth in the Acts of the General Assembly of said State, for the years 1883 and 1884, page 588, sections 58 and 60," etc. The third is like the second, except that instead of charging that the defendant had dealt in certificates of debt, etc., it charges that he "did sell on commission certificates of debt," etc. And the fourth varies from the second only in that the charge therein is, that the defendant "did sell for compensation certificates of debt," etc., in violation of the sections of the act mentioned in the preceding counts.

Section 60 of the act prescribes the amount of the license tax to be paid for the privilege of conducting the business of a stockbroker, and by section 58 it is enacted that "a stockbroker shall have the right to buy and sell for profit, or to sell on commission, the coin, exchange, stocks, certificates of debts, shares in chartered companies, bank notes, and notes used as a currency, and may sell either privately or by auction, and also negotiate loans upon real estate securities."

By the eighth section of chapter forty-two, of the Code of

1873, it was declared that any person buying and selling coupons issued under the act of 1871, known as the funding bill, should be deemed a broker within the meaning of the license laws of this State. And so the law for a time remained. But by the sixty-fifth section of the act above mentioned, which was approved March 15, 1884, a special license is required of those who are designated as *tax-receivable coupon brokers*, that is to say, all persons, who "sell tax-receivable coupons from bonds of the State of Virginia," and the amount of the tax imposed is much greater than the tax required by section 60, of an ordinary stockbroker. So that, as the law now is, a stockbroker, as such, cannot sell *the tax-receivable* coupons of the State, though the act provides that a stockbroker may "purchase such coupons for the purpose of funding them in new three *per centum* bonds of Virginia."

Upon the finding of the indictment in the present case, issue was joined on the plea of not guilty, and a verdict and judgment having been rendered for the defendant, the commonwealth obtained a writ of error. The facts proved at the trial are certified, and are as follows: "That the defendant did during the month of November, 1886, sell *tax-receivable coupons* detached from the bonds of the commonwealth of Virginia, a part of which were detached from bonds issued under the act of March 30, 1871, and a part of which were coupons detached from bonds issued under the act of March 28, 1879, to the amount of about of $5,000. That he was not the owner of the bonds or the detached coupons so sold, and that he sold the same upon commission. * * * That he had no license as a stockbroker," under "sections 58 and 60" of the act above mentioned, "nor did he have the special license required by" section 65 of the same act of a tax-receivable coupon broker.

At the trial, the commonwealth moved the court to give several instructions to the jury, all of which were refused. The first is as follows: "the court instructs the jury that if

they believe from the evidence that the defendant did in the month of November, 1886, conduct the business of a stockbroker in the city of Alexandria, by selling tax-receivable coupons, detached from the bonds of the State, publicly to those who applied to buy, he receiving compensation therefor, without having first obtained the license required by law to engage in such business, then they shall find the defendant guilty."

This instruction was rightly refused. The defendant was not indicted under the sixty-fifth section of the act mentioned in the indictment, for conducting the business of a tax-receivable coupon broker, without a license, but for doing business without a license as a stockbroker, in violation of the fifty-eighth and sixtieth sections of the act. The two classes of offences, as we have seen, are widely different, and, therefore, under the indictment in the case, there properly could have been no conviction of the defendant upon proof of his having sold tax-receivable coupons only. It is contended, however, by the attorney-general, that the indictment is substantially under the sixty-fifth section; that the reference in the indictment to the fifty-eighth and sixtieth sections is merely surplusage, and cannot, therefore, affect the indictment, in view of the general provision in the Code of 1873 (ch. 201, § 11), which provides that no indictment shall be quashed or deemed invalid for the omission or insertion of words of mere form or surplusage. But manifestly this is not the correct view. The first count in the indictment is unquestionably under the fifty-eighth and sixtieth sections. It, in plain and distinct terms, alleges that the defendant did conduct the business of *a stockbroker*, without a license, and in violation of sections 58 and 60 of the act. And the subsequent counts charge an offence substantially in the language of those sections, to which they each expressly refer; and in neither is it charged that the coupons mentioned were tax-receivable coupons, and *non constat* that they were. " Certificates of debt, commonly known and called 'Virginia coupons,'" are not necessarily tax-

receivable coupons, since the court must take judicial notice of the fact that coupons, other than tax-receivable coupons, have been issued by the State, and are outstanding.

Nor was there error in refusing to give the second instruction asked for by the commonwealth, and which is as follows: "The court instructs the jury that the public sale of tax-receivable coupons, detached from the bonds of the commonwealth, and not taken from bonds the property of the seller, constitutes one a stockbroker under the laws of this State, if the seller receives compensation therefor." The reasons already stated, are sufficient to show that this instruction ought not to have been given.

And it is equally plain that the third instruction was rightly refused. It is in these words: "The court instructs the jury that if they believe from the evidence that the defendant did, in the month of November, 1886, in the city of Alexandria, publicly sell on commission certificates of debt, commonly known and called 'Virginia coupons,' detached from the bonds of the State, without first having obtained the license required by law to sell the same, they shall find the defendant guilty." This instruction was too broad, and would have doubtless misled the jury had it been given. If given, it would have been equivalent to telling the jury that proof of a sale, without a license, by the defendant of tax-receivable coupons from bonds of the State of Virginia, was of itself sufficient to warrant a conviction, in the present case, which, as a legal proposition, is not correct, the indictment being for a different offence.

The remaining instructions which were asked for by the commonwealth and refused by the court, are substantially the same as the third, and need not be more particularly noticed.

Objection is also made to the action of the court in giving, of its own motion, to the jury the following instruction: "The court instructs the jury that R. T. Lucas was improperly

indicted under the act of 1883 and 1884, sections 58 and 60, chapter 450."

The court doubtless meant to tell the jury by this instruction that, upon the evidence in the case, an indictment under sections 58 and 60 of the act could not be sustained. And in this view of it, it is contended that the court invaded the province of the jury, and thereby erred. Without stopping, however, to consider the question thus raised, it is sufficient to say that the commonwealth has not been prejudiced by the instruction, inasmuch as the verdict rendered by the jury is right. There is no better settled principle than that the *allegata* and the *probata* must correspond, and the record in the present case shows that the defendant was indicted for one offence, and that the evidence submitted, tended to prove another and different one. There was no evidence before the jury tending to show that the defendant has ever conducted the business of a stock-broker, and consequently the judgment complained of must be affirmed.

JUDGMENT AFFIRMED.