# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RICHMOND RAILWAY AND ELECTRIC CO. v. GARTHRIGHT.

### FEBRUARY 20, 1896.

1. RAILROADS—*Safe Machinery—New Inventions—Latest Improvements.*—It is incumbent on a railway company whose cars are propelled by steam or electricity to provide its cars with suitable and safe machinery, and to use ordinary and reasonable care to avail itself of all new inventions and improvements known to it, which will contribute to the safety of its passengers, and prevent accident to others; but it is not required to have in use the latest improvements which human skill and ingenuity have devised to prevent accidents.

2. INSTRUCTIONS—*Harmless Error.*—Although an erroneous instruction may have been given by the trial court, the appellate court will not reverse the judgment of the trial court, and set aside the verdict of the jury, if the court can see from the whole record that, even under correct instructions, a different verdict could not have been rightly found, or that the exceptant could not have been prejudiced by the erroneous instruction.

3. STREET RAILWAYS—*Street Crossing—Right of Foot Passenger—Crowding Cars.*—The people of a city have the same right to pass along an intersecting street, on foot or in vehicles, as a street-car has to go across; and it is gross negligence in a street railway company to so over-crowd and load down its cars with passengers, beyond any reasonable or proper limit, as not to be able to stop them readily as they approach intersecting streets, if necessity requires it. If, from such crowding and consequent inability to stop, a collision occurs, resulting in injury to a passenger, the company is liable for such injury.

4. DAMAGES—*Personal Injuries—Excessive Verdict.*—There is no legal measure of damages for a personal injury to a human being, and the consequent pain and anguish; and the verdict of a jury will not be set aside on the ground of excessive damages, unless the damage be so great as to indicate that the jury was actuated by partiality or prejudice.

Error to a judgment of the Circuit Court of the city of Richmond, rendered May 20, 1893, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Wyndham R. Meredith,* for the plaintiff in error.

*Courtney & Patterson,* for the defendant in error.

RIELY, J., delivered the opinion of the court.

The judgment to which the writ of error was awarded in this case was recovered for injuries received in a collision between a car of the Railway and Electric Company and a hook-and-ladder truck of the Fire Department of the city of Richmond.

Three grounds are assigned for the reversal of the judgment.

The first is that the plaintiff in the suit was barred of the right to recover because of his own contributory negligence.

The case comes before us upon a certificate of the evidence, and in considering it we must apply the familiar rules applicable to a demurrer to evidence. These rules require us to accept as true all of the plaintiff's evidence and all just inferences which could be properly drawn from it by a jury, and to reject all of the evidence of the defendant which conflicts with that of the plaintiff and all inferences which do not necessarily result from it. Many witnesses were examined on both sides, and there was considerable conflict in much of the testimony. It is unnecessary to rehearse it, but sufficient to say that, testing it by the above rules, the evidence clearly establishes the negligence of the defendant com-

pany, and does not justify the claim that the plaintiff was guilty of such contributory negligence that but for the same the accident would not have happened.

The second assignment of error relates to the instruction given by the court, numbered 2, which is as follows:

" The jury are further instructed that if they believe from the evidence that, when the horses of the truck came in sight of persons on the defendant's car, the said car was at such a distance from the point of collision that the accident might have been averted but for the want of a Sprague motor on the car, or the crowding on the platform of passengers, preventing the motorman's use of his machinery, then the defendant company was guilty of negligence, and the jury must find for the plaintiff, even though they believe that the motorman on the car did all in his power to stop his car, unless they believe that the negligence of plaintiff or tillerman contributed to the accident."

The objection made to this instruction is that it pronounces the failure of the company to equip its car with a Sprague motor to be negligence, when there was no evidence before the jury tending to show that such motor was a necessary equipment of its car, or that the want of it caused the accident in which the plaintiff was injured. The evidence upon this point was very meagre. Only three witnesses, all of whom were called by the defendant, testified in regard to the matter. One of them, Mr. Hill, who had worked in the shops of the company, and was a conductor on one of its cars at the time he testified, but had never been a motorman, stated that this particular car was the only one that was provided at the time of the accident with a Westinghouse motor, and that the others were equipped with Sprague motors. When questioned as to which was the best machine for stopping a car suddenly, he answered that the Westinghouse " re-

verses slower," and that the Sprague " takes quicker than the
other," whatever that may mean. Mr. Jackson, who was
the conductor on the car, was asked by which motor could a
car be stopped in the shortest distance, and replied that it was
as easy to stop the car with the one as the other. Major
Selden, the superintendent of the company, was the only other
witness as to this matter. He stated that the company, at
the time he testified, was using the Westinghouse motor almost
entirely on its Main-street line, and the Sprague motor on its
Clay-street line. When asked which was the best motor, he
stated : " I think the Westinghouse a little better " ; and when
asked, further, if a car could be stopped quicker with the West-
inghouse motor than with the Sprague, he replied : " The dif-
ference is so slight it is hardly appreciable." The foregoing
is substantially all the evidence upon which the instruction
complained of was based.

It thus appears that it was not testified to that the Sprague
motor was a better appliance than the Westinghouse, or that
at the time of the accident it had been tested and was in
practical use by electric street railways, or had been adopted
by them as a safer machine, or that the accident could have
been averted if the car had been equipped with a Sprague
motor.

It was the legal duty of the defendant company to provide
its cars with suitable and safe machinery. It is incumbent
upon a railway company, propelled by the powerful and dan-
gerous agency of steam or electricity, especially in a large
and populous city, to use ordinary and reasonable care to
avail itself of all new inventions and improvements known
to it which will contribute to the safety of its passengers and
prevent accidents to others whenever the utility of such im-
provement has been tested and demonstrated, but it is not
required to have in use the latest improvements which human
skill and ingenuity have devised to prevent accidents. Pat-

terson's Railway Law, sections 245–7, and Elliott on Streets 610.

The instruction was erroneous in singling out the Sprague motor, and making the liability of the railway company depend upon its failure to equip its car with such motor, if the jury believed that by its use the accident could have been averted, when it had not been shown in evidence that the Sprague motor was a better and safer appliance, or that it had been tested and its superiority over the Westinghouse demonstrated.

It does not follow, however, that the judgment for that reason must be reversed. It is the settled rule of this court, recognized and acted upon in numerous cases, that if the court can see from the whole record that even under correct instructions a different verdict could not have been rightly found, or that the exceptant could not have been prejudiced by the erroneous instruction, it will not for such error reverse it. *Preston* v. *Harvey*, 2 H. & M. 55; *Colvin* v. *Menefee*, 11 Gratt. 87; *Kincheloe* v. *Tracewells*, Id. 587; *Bank of Danville* v. *Waddill*, 27 Gratt. 448; *Brighthope Railway Co.* v. *Rogers*, 76 Va. 443; *Western Union Tel. Co.* v. *Reynolds Bros.*, 77 Va. 173; *Snouffer* v. *Hansbrough*, 79 Va. 166; *Penn* v. *Hatcher*, 81 Va. 25; *B. & O. R. R. Co.* v. *McKenzie*, Id. 71; *Payne* v. *Grant*, Id. 164; *R. & D. R. R. Co.* v. *Norment*, 84 Va. 167; *Commonwealth* v. *Lucas*, 84 Va. 303; *Wager* v. *Barbour*, 84 Va. 419; *Bernard* v. *R., F. & P. R. R. Co.*, 85 Va. 792, and *Richmond Granite Co.* v. *Bailey*, decided at present term, *ante* 554. See also Sackett's Instructions to Juries (2d ed.), 24.

The collision between the car and the truck took place at the intersection of Main and Third streets. The car was passing down Main street, and the truck was proceeding along Third street.

It appears from the evidence that the company had the

right under the law to run its cars at as great a rate of speed as six miles an hour; that this car was capable of seating twenty-two persons, and could comfortably transport as many as fifty persons; that the cars could be stopped within a distance equal to their length, or at most within a distance equal to a length and a half of a car, which was generally understood by the public; and that this particular car was about twenty-two feet long, including its front and rear platforms. It also appears from the evidence that the car at the time of the collision was crowded with passengers to its utmost capacity, and that both platforms, and even the steps, were thronged, it being variously estimated that there were not less than from sixty to eighty people on the car. So crowded and jammed together were they that the conductor was unable to collect the fare from half of them, and the motorman unable, as testified to by some of the witnesses, to have free command of his brake. As to the foregoing facts there was no material, if any, conflict between the evidence of the plaintiff and that of the defendant.

There was very much conflict, however, in the evidence in other material respects. If we look to that of the plaintiff alone, it appears that the car was somewhere between fifty and ninety feet—these being the two extremes of the estimates of the witnesses—above Third street when the truck reached Main street, and started to go across the car track; and that it could have been easily stopped, and the collision prevented, if the car had not been overloaded with passengers, and running at the rate of eight to twelve miles an hour—much in excess of the speed allowed by law. Upon this evidence, it could but be held that the company was guilty of gross negligence, irrespective of the kind of motor with which it was equipped.

If we turn now to the evidence of the defendant, it appears that the witnesses estimated that the car was going slower

than usual—at a speed of only three to four and a half miles an hour—and that it was from forty to fifty feet from Third street when the truck was first seen by persons on the car, passing rapidly from Third street across the track of the railway. There was then ample distance within which the car could ordinarily have been brought to a stop with either the Westinghouse or Sprague motor, and the collision been averted. After the truck, which, together with the horses, measured fifty feet, was seen by the passengers, and was or should have been seen by the motorman, it had nearly time enough to clear the track of the railway before the car struck it, the car having struck the truck immediately in front of its hind-wheels, about forty-two feet back from the heads of the horses drawing it. If the car, with a full complement of passengers, but not loaded beyond its proper capacity, was capable of being stopped within a distance equal to its own length, which was twenty-two feet, or at most within a space less than twice its length, when running at its maximum speed of six miles an hour, as the evidence shows, it follows that it could have been brought to a stop in a still shorter distance, if going at a rate not exceeding four or four and a half miles an hour. The car had not less than fifty feet, and probably considerably more, within which to be stopped after the truck was seen about to cross the railway track, when ordinarily half of this distance would have sufficed. It is self-evident that the heavier the load the more unmanageable the car, and the greater the distance required within which to stop it. And this is fully confirmed by the testimony of Major Selden, an expert electrician and the superintendent of the company, than whom no witness was more competent to speak. In answer to the question, what would be a reasonable distance within which to stop the car, he replied: "From all accounts they had a very heavy load, probably seventy or eighty passengers. I would estimate that

that car weighed at least 15,000 pounds, if it had eighty passengers, knowing the weight of the car and motor.   *   *   * I don't think a car with the weight that that car had on could be stopped in less than fifty or sixty feet, going at any speed." This being so, it is manifest that the collision between the car and the truck was caused by the crowded and overloaded condition of the car, and not all due to the particular motor with which the car was equipped.   Upon the whole evidence, · therefore, the verdict was right, and the railway company could not have been prejudiced by the error contained in the instruction complained of.

The people of a city and vehicles have the same right to pass along an intersecting street as the car has to go across it.   " The car has a right to cross, and must cross the street; and vehicles and foot passengers have a right to cross, and must cross the railroad track.   Neither has a superior right to the other."   O'Neil v. R. R. Co., 129 N. Y. 125 ; Buhrens v. R. R. Co., 53 Hun 571 ; S. C., affirmed 125 N. Y. 702; Chicago City Railway Co. v. Young, 62 Ill. 238 ; and Booth on Street Railway Law, sec. 304, and cases there cited.   And it is gross negligence in a street railway company to overcrowd and load down its cars with passengers beyond any reasonable and proper limit, and consequently not to be able to control and stop them readily as they approach an intersecting street, in case it may be necessary to do so to avert a collision or prevent an accident.

The third assignment of error is that the damages are excessive.

It was proved by Dr. Ross, the surgeon who was summoned to attend the plaintiff at the time of the accident, that the plaintiff had a wound on the side of his face, and through his brow, which he had to close with stitches; that he was suffering from concussion, and insensible when he dressed his wounds; and that he remained insensible until

the next morning. He also stated that the plaintiff was much bruised about his body, and that he attended him professionally for ten days or two weeks. The plaintiff himself testified that, besides the injuries mentioned by Dr. Ross, his teeth were broken ; that his knee was so injured that he was lame for a long time ; and that he was rendered unable to work efficiently at his trade for six or eight months.

No method has yet been devised, nor scales adjusted, by which to measure or weigh and value in money the degrees of pain and anguish of a suffering human being, nor ever likely to be, and we cannot say upon the evidence in this case that $1,000 was excessive damages. It was not so great, considering the injuries proved to have been sustained by the plaintiff, as to furnish ground for believing that the jury were actuated by partiality or prejudice; and unless this is the case, under the well-settled rule in this State, the court should not disturb the verdict. *Farish* v. *Reigle*, 11 Gratt. 697; and *N. & W. R. R. Co.* v. *Shott*, decided at the present term, *ante* p. 34.

There is no error in the judgment complained of for which it should be reversed, and the same is affirmed.

*Affirmed.*