Statement.

## Staunton.

BROCK v. BEAR AND OTHERS.

September 18, 1902.

1. BILLS OF EXCEPTION—*Refusal to Permit Witness to Answer—What Bill Should State.*—Where a question is asked a witness which he is not permitted to answer, and exception thereto is taken, the bill of exception must show what the party asking the question expected to prove, else the appellate court cannot tell whether or not the witness had any knowledge on the subject, or the question was relevant or material.

2. APPEAL AND ERROR—*Erroneous Instructions—When Harmless.*—The action of the trial court in giving or refusing instructions will not be reviewed by the court when it can see from the whole record that under proper instructions a different verdict could not have been rightly found, or that the exceptant could not have been prejudiced.

3. ADVERSE POSSESSION—*Intention—Erection of Buildings.*—Adverse possession depends upon the intention with which the possession is taken and held, but this intention is often best shown by the acts of the parties and their manner of occupancy. The erection of costly buildings on land, and the use and occupation thereof for years, in the face of all persons who could question the right, is sufficient evidence of an intention to hold adversely the land covered by said buildings, and the acts are open and notorious.

Error to a judgment of the Circuit Court of Rockingham county, rendered April 12, 1900, in an action of ejectment wherein the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Affirmed.*

The opinion states the case.

*Winfield Liggett*, for the plaintiff in error.

*Sipe & Harris* and *O. B. Roller & Martz*, for the defendants in error.

HARRISON, J., delivered the opinion of the court.

This action of ejectment was brought to recover a narrow strip of land abutting four feet on Federal alley, and running out to a point on Main street in the town of Harrisonburg, Va., alleged to contain 538 square feet. The controversy is between the respective owners of two adjoining lots improved with substantial brick buildings used for business purposes. The plaintiff bought one of these improved lots in 1898, and the conveyance to her contains a specific description by metes and bounds of her purchase which conforms to the dimensions of the lot with the buildings as at present constructed. Her deed, however, concludes with the statement that the property conveyed is part of the property conveyed by Gray and wife to trustees by deed dated March 12, 1861, and she insists that a reference to this deed shows that the buildings of the defendants are erected on her land to the extent of the strip she seeks to recover.

The result of the controversy in the lower court was a verdict and judgment in favor of the defendants.

The defendants relied upon a continuous adverse possession for a period beyond that required by statute to perfect their title, if it were otherwise defective.

On the other hand, the plaintiff insists that those under whom the defendants claim took possession of the controverted strip without the intention of claiming or occupying more than their own boundary, and that therefore they occupy the strip in question by mistake, and that such holding cannot ripen into a title by adverse possession.

The first three bills of exception are to the action of the court in refusing to allow a witness to answer certain questions propounded on cross-examination by the plaintiff.

These assignments cannot be considered, because the bills of

exception do not show what was expected or proposed to be proved by the witness. Where a question is asked, and the witness is not permitted to answer, the bill of exception must show what the party asking the question expected to prove. This is necessary because it may be the witness had no knowledge upon the subject, or what he knew was irrelevant or immaterial. *Life Ins. Co.* v. *Pollard*, 94 Va. 146; *Driver* v. *Hartman*, 96 Va. 518; *Greever* v. *Bank of Graham*, 99 Va. 547.

The action of the court in giving and refusing certain instructions is assigned as error.

It is unnecessary to consider this assignment of error, for if it were conceded that the action of the court was erroneous, as claimed, it is immaterial, for under the facts of this case, upon instructions admitted to be correct, a different verdict could not have been rightly found by the jury. It is the settled rule of this court, recognized and acted upon in numerous cases, not to reverse where the court can see from the whole record that under correct instructions a different verdict could not have been rightly found, or that the exceptant could not have been prejudiced by the action of the court in giving or refusing instructions. *Richmond Railway Co.* v. *Garthright*, 92 Va. 627; *Wright* v. *Independence Bank*, 96 Va. 728; *Winfree* v. *First National Bank*, 97 Va. 83.

There is no evidence tending to show that those under whom the defendants claim occupied this disputed strip without any intention of claiming it as their own. On the contrary, their undisputed acts, which speak louder than words, demonstrate that they did intend to claim it. The record shows that in November, 1898, Mrs. E. C. Brock, the plaintiff, purchased of C. A. & N. Sprinkel an improved lot fronting on the east side of Main street, in the town of Harrisonburg, and running back 269 feet eastward to Federal alley. The adjoining lot on the north is owned by Joseph Ney, and that on the south by the defendants, who derived the same shortly before the institution of this

suit from their father, Abner Shacklett. These three lots front-ing on Main street and running back to and abutting on Federal alley are each improved with valuable buildings used for busi-ness purposes. Abner Shacklett acquired the lot now owned by the defendants from Jacob Gassman in 1878. At that time, and for many years prior to that date, the dividing line between the two lots now owned by the parties to this controversy, recognized and acted upon by their predecessors in title, appears to have been marked at Federal alley, its eastern extremity, by the north wall of a warehouse on the Shacklett lot, and, continuing in the line of this wall, a fence extending westward to Main street. The narrow strip of ground in controversy was then covered by the old warehouse, and within the Gassman side of the fence mentioned. In 1878 Gassman, before his sale to Shacklett, erected a large warehouse, by extending the old warehouse west-ward to within a few feet of the rear of the storehouse on Main street. The north wall of this new warehouse took the place of the partition fence, and was located on a continuous line of the north wall of the old warehouse extended to the north corner of the Shacklett lot on Main street, thus continuing the disputed strip in the possession and occupancy of Gassman and his alienees. Up to the date of the institution of this suit in 1898, no question had been raised by anyone as to the location of the building erected by Gassman. The Sprinkels, who owned and occupied the lot now owned by the plaintiff, were present all the time, saw the buildings erected, and continued as the owners and occupants of the premises, without questioning their location, until they sold their property to the plaintiff in 1898.

It is true that adverse possession depends upon the intention with which the possession is taken and held, but while the in-tention to claim title must be manifest, it need not be expressed. The intention to hold and claim title is often best shown by the acts of the parties, and their manner of occupancy. It would be difficult to conceive a more unequivocal determination to take

and hold title to land up to a given line than to erect costly buildings upon the land up to that line, and use and occupy the same for years in the face of all persons who could question the right. In such a case the intention is explicit, and the acts open and notorious.

There being no other evidence in the record to throw light upon the intention with which the defendants took possession than the unequivocal acts mentioned, and their possession having been open and notorious for more than fifteen years, no other verdict could have been properly found, under the facts of this case, than that which was reached by the jury.

For these reasons the judgment must be affirmed.

*Affirmed.*