# Richmond.

## CENTRAL LUNATIC ASYLUM V. FLANAGAN.

### JANUARY 15th, 1885.

1. PRACTICE AT COMMON LAW—*Bill of particulars.*—In action for damages, defendant's motion that plaintiff be required to file bill of particulars, is then denied, but at next term it is allowed, and plaintiff files the bill, and trial proceeds, without defendants asking for time to consider of his defence, he cannot raise the objection in the appellate court.

2. CONSTRUCTION OF STATUTE—*Perfected contract.*—Under acts approved 6th March, 1882 (Acts 188'-'82, pages 246–249), authorizing the directors of the Central Lunatic Asylum to contract for the erection of suitable buildings for the accommodation of the colored insane of this State, no written and signed contract was required ; and upon the acceptance by the board of the contractor's bonds, and the spreading upon the minutes of the articles of agreement between the parties, a contract was consummated, for any breach whereof the party aggrieved was entitled to recover damages. And if the bonds taken *from* the contractor were of the required penalty and conditions, and with sufficient security, it was immaterial whether they were executed *by* the contractor or by others.

3 PRACTICE AT COMMON LAW—*Instructions.*—It was not error in the court to instruct the jury in such action that, after the board's accepting the plaintiff's bond and furnishing him with a written contract, and after his executing it and delivering it to the president of the board, the president's failure to execute it could not deprive the plaintiff of any right under the contract; and that if thereafter, without any fault on plaintiff's part, the defendant board prohibited or prevented him from fulfilling the contract, they should find for the plaintiff for the labor done, the money expended, the materials furnished, and the profits he would have realized in the performance of the contract, had he been permitted to fulfill it. *Com'rs Sinking Fund* v. *Kendall Bank-Note Co.*, 79 Va.

4. IDEM—*Instructions.*—When instructions given cover the entire case and

properly submit it to the jury, it is not error to refuse to give others. *Laber* v. *Cooper*, 7 Wall. 565. It is safest, however, for the court to give instructions asked for when they correctly propound the law and are relevant to any evidence in the case. *Hopkins* v. *Richardson*, 9 Gratt. 485.

Error to judgment of circuit court of Richmond city, rendered 19th January, 1884, in an action of assumpsit, wherein Madison Flanagan was plaintiff, and the board of directors of the Central Lunatic Asylum were defendants. The object of the suit was to recover damages for the breach of a certain contract. The jury found for the plaintiff, and assessed his damages at $6,159.50. During the trial the defendant excepted to sundry rulings of the court, and after the rendition of the verdict moved to set it aside as being contrary to the law and the evidence; but the motion was overruled, and the court entered judgment according to the verdict. To which judgment the defendant board obtained, from one of the judges of this court, a writ of error and *supersedeas*.

Opinion states the case.

*Attorney-General F. S. Blair*, for the plaintiff in error.

*W. M. Flanagan*, *W. W. Crosby*, and *Edgar Allan*, for the defendant in error.

LEWIS, P., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of the city of Richmond. The facts of this case are few, and the principles of law applicable thereto well settled. Pursuant to an act of the legislature, approved March 6th, 1882, and amended and reënacted the same day (Acts 1881–'82, p. 246, *et seq.*), the plaintiffs in error, on the 22d day of August, 1882, directed the president of the board to make proper advertisement for bids for the erection of a new asylum building. Advertisement was duly made, and at a subsequent meeting of the

board, when the bids were opened, the bid of the defendant in error, for the proposed brick and carpenter work, was accepted. The price bid and accepted was: For the brick work, $24,995.50; and for the carpenter's work, $24,480.50. By the provisions of the act aforesaid, the directors were required to take bonds, with sufficient security, from the person or persons contracting for the work, in the penal sum of $20,000. With this requirement the parties complied, the defendant in error executing bond with sureties in that sum, upon being informed of the acceptance of his bid by the board. Afterwards, to-wit, on the 23d day of October, 1882, the defendant in error was informed by letter, from the chairman of the building committee, that he was desired by the committee to furnish "more responsible bondsmen" within the next ten days. To this letter he replied as follows: "Without waiving any right I now have in the premises, I would offer you, in response to your request, the enclosed bond, on which are the names of J. C. Wool and Edgar Allan." This bond was in a penalty of $13,000, and, like the first bond, was with condition for the faithful performance of the work for which the bids of Flanagan, the defendant in error, had been accepted. This bond, along with the first bond, was approved and accepted by formal resolution of the board of directors, at a meeting held on the 30th of the same month. And at the same meeting articles of agreement between the board on the one hand and Flanagan on the other, with specifications attached, were spread at large on the minutes of the board. Copies of these articles were ordered to be made for the signatures of the president and Flanagan. The latter signed the copy presented to him, which was thereupon forwarded by the secretary to the president, to be also signed by him. But, being called from the State at the time, he did not sign it, though he testified that he would have done so if he had received the paper before his departure from the State.

The articles of agreement and specifications contained in full the terms of the contract between the parties, and it appears

from Flanagan's testimony that, after the adjournment of the meeting of the board, at which his bonds had been accepted and approved, and on the same day, he was instructed by various members of the board "to push ahead with the work," which he soon thereafter proceeded to do. It appears, from the minutes of the board, that at a meeting, the day after the acceptance of the bonds of the contractor, a resolution to reconsider the action by which the bonds had been accepted was rejected, and of this action, it seems, Flanagan was promptly informed. Afterwards, however, at a meeting of the board, on the 13th December; its previous action in respect to the acceptance of the bonds was, on motion, set aside and annulled; and, thereupon, it was resolved "that Madison Flanagan be allowed until the 10th day of January, 1883, to give a new bond as contractor in the sum of $12,000, to be approved by the building committee and the board," etc. After being informed of this action, a bond in the required penalty of $12,000, signed by C. H. Harman and W. W. Flanagan, was furnished by Flanagan, the condition being to make good any liability that might thereafter "be adjudged against the said Madison Flanagan and his sureties" on the former bonds, to the extent of twelve thousand dollars. In a letter to the board, transmitting this bond, under date of January 1, 1883, and referring to its resolution requiring it, Flanagan said: "Permit me to say that I do not concede your right to annex the last requirement as to a bond, and against it I respectfully enter my protest, maintaining and holding, as I do, that our mutual promises and agreements are now binding upon both of us.  *  *  *  With the addition of these names (on the bond now furnished), I am prepared to show that I have given security upon a penalty of $12,000, which is far in excess of $100,000, and I would submit that your repeated demands might have operated harshly, but for my ready ability to go far beyond my present showing as to endorsers. I have not understood your last request as a direction to suspend work, and have continued to prosecute the

same as fast as the weather would permit, and have completed the frames for the cellar."

But it would seem that the board was not yet satisfied; and, accordingly, at a meeting held on the 19th January, it was resolved that Madison Flanagan be dismissed from the work, and that advertisement be made for new bids. It is true there was oral testimony that the resolution was erroneously entered by the secretary. For the board it was contended that this action was in consequence of the failure of Flanagan to furnish bond and security according to the requirements of the board. But, in the view we take of the case, the result is the same.

In consequence of this termination of the relations between the parties the present suit was brought, in which the plaintiff claims damages to the amount of $25,000. The case was fully heard, and resulted in a verdict and judgment for the plaintiff for $6,159.50.

At the trial the defendants asked for thirteen instructions, all of which were refused, and in the petition to this court there are no less than sixteen errors assigned, with an intimation of " other errors to be assigned at bar."

It is wholly unnecessary to consider these various assignments in detail. The general principles applicable to them all will be stated, and by which the judgment must be controlled.

It is insisted, first, that the circuit court erred in refusing to require the plaintiff, on the defendant's motion, to file a bill of particulars. It appears that the motion was denied at the term at which it was made, but at the next term, and before trial, the plaintiff appeared and filed a bill, in which the items of his claim were fully and clearly set out. Thereupon, if the defendants desired time for the preparation of their defence, an application to the circuit court for a postponement of the trial ought to have been made. And as no such application was there made, the objection now raised here cannot avail.

There can be no reasonable doubt that, upon the acceptance of the plaintiff's bonds, and the spreading upon the minutes of

the board the articles of agreement between the parties, a contract was consummated, for the breach of which the plaintiff was entitled to recover damages.    The statute required bond in a certain penalty, with sufficient security, to be taken from the contractor; but did not require that a contract between the parties should be reduced to writing and signed.    The terms of the contract had been agreed upon when the articles were signed by the plaintiff, and there was nothing further for him to do but to proceed with the prosecution of the work he had undertaken.    The testimony shows that the first bond was probably "sufficient security;" but if there was any doubt as to the sufficiency of the security, the second bond, which was afterwards furnished, and which was formally approved by the board, afforded a security which would seem to have been ample.    At all events there is no testimony whatever in the record to the contrary.    And in respect to the last (or third) bond, the proof is overwhelming that the signers were men of means far more than sufficient to easily discharge the amount of the penalty in which the bond was executed.    The objection urged by the Attorney-General to the validity of the second and third bonds, because neither was in the penalty of $20,000, and the last was not executed by the contractor, is not well founded.    The object of the statute under which the parties were proceeding was to require, as its terms import, a bond in a penalty of $20,000, with security, to be taken; but there is no requirement that the bond shall be executed by the contractor himself.    The interests of the State are protected if the security is sufficient, whether the bond is executed by the contractor or not; and therefore the language of the act is that bond shall be taken *from* the contractor, which does not necessarily imply that it shall be *executed by* the contractor.

In the present case the first bond was signed by the contractor, and was in a penalty of $20,000, as required by the statute, and the second and third were intended simply to strengthen the security of that bond.    And that they were valid

obligations for that purpose, in view of the general powers of the board to contract, etc., there can be no doubt. Code 1873, page 715.

The requirements of the statute in respect to taking bond were, therefore, fully complied with, and the court properly instructed the jury as follows: "If the jury believe that, after the action of the board of the asylum of October 30th and October 31st, 1882, in accepting the bonds of the plaintiff and in prescribing the form of contract, the plaintiff was furnished with a written contract in such form, and that he executed it by his own signature and delivery to the president of the board, then it became the duty of the president to execute it on behalf of the board, and his failure to do so could not deprive the plaintiff of any rights under the contract, and if thereafter, without any fault on the part of the plaintiff, the defendants prohibited or prevented him from fulfilling the contract, they should find for the plaintiff."

Nor did the court err in instructing the jury that if they believed, from the evidence, that the plaintiff was entitled to recover, they should allow a reasonable sum for work and labor done, money expended in the performance of the contract, and materials furnished, and, in addition, an equivalent sum for *the profits which he would have realized* from the performance of the contract if he had been permitted to execute it. This was entirely right. The subject has been recently considered by this court, in the case of *The Commissioners of the Sinking Fund* v. *The Kendall Bank-Note Company*, 79 Va., 563, in which, after a review of the authorities by Judge Lacy, who delivered the opinion, the law was declared to be as stated to the jury by the circuit court.

By these instructions the law of the case was fully and correctly propounded to the jury, and, upon the evidence, we are of opinion that the verdict is right and ought not to be disturbed. It is well settled that when instructions are given which cover the entire case, and which properly submit the

case to the jury, it is not error to refuse to give others, even though in point of law they are correct. *Laber* v. *Cooper*, 7 Wall. 565. It is safest, however, for the court to give instructions asked for when they correctly propound the law and are relevant to any evidence in the case. *Hopkins* v. *Richardson*, 9 Gratt. 485; 4 Minor's Insts. Pt. I, page 747, and cases cited.

What has been said sufficiently disposes of the several assignments of error in the petition, and requires an affirmance of the judgment of the circuit court.

JUDGMENT AFFIRMED.