𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SHENANDOAH VALLEY RAILROAD CO. V. MOOSE.

NOVEMBER 10, 1887.

1. RAILROAD COMPANY—*Infirm passengers—Negligent injuries—Instructions.*—Passenger afflicted with rheumatism was thrown from his seat by a collision of trains, and his thigh-bone broken. In action for damages company's counsel asked that the jury be instructed that, though they believed the plaintiff was injured as complained of, yet he cannot recover if they believed that he was in such an infirm state as would have prevented a prudent man from taking the risk of travel, and but for which state he would not have received the injury.

HELD:

The instruction was properly refused, because inconsistent with both the evidence and the law.

2. IDEM—*Irrelevant instructions—Case at bar.*—It is not erroneous to refuse to give instructions that are abstract and irrelevant to the evidence, and hence misleading, such as the second and third asked for by the defendant in the case at bar.

3. APPELLATE COURT—*Variances—Objections.*—It is too late to make objections here for the first time to a variance between the allegations and the proof.

Argued at Staunton.· Decided at Richmond.

Error to judgment of circuit court of Rockbridge county, rendered fifth May, 1887, in an action of trespass on the case for damages for negligent injury, wherein the defendant in error, Moose, was plaintiff and the Shenandoah Valley Railroad Company was the defendant.

The action was brought to recover damages for injuries received by the plaintiff while travelling as a passenger

on the road of the defendant company. At the time the plaintiff was injured he was seated in a Pullman car attached to the train upon which he had taken passage. The injuries were caused by the collision of the train with a coal car of the defendant at Ripon station, in Jefferson county, West Virginia, the plaintiff being thrown from his seat in the car with such violence as to break the neck of his right thigh-bone, and to produce other and permanent injuries. On the day mentioned in the declaration he took the train at Loch Laird station, in Rockbridge county, to go to New York, and while on his journey received the injuries complained of. The action was *assumpsit*; founded upon an alleged contract to safely carry the plaintiff from the station last mentioned to the northern terminus of the defendant's road, to-wit, Hagerstown, in the State of Maryland. And the breach alleged was the collision and consequent injuries to the plaintiff above mentioned.

At the trial, the court, on the plaintiff's motion, gave to the jury the following instructions:

"I. When injury or damage happens to a passenger [on a railroad] by a collision, or by any other accident occurring on the road, the *prima facie* presumption is that it occurred by the negligence of the railroad company, and the burden of proof is on the company to establish that there has been no negligence whatsoever, and that the damage has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent.

"II. The law, in tenderness to human life and limb, holds railroad companies liable for the slightest negligence, and compels them to repel by satisfactory proofs every imputation of such negligence. When carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence.

Any negligence or default in such case will make such carrier liable.

"III. The Shenandoah Valley Railroad Company, as a common carrier of passengers, was bound to exercise the utmost degree of diligence and care in safely transporting the plaintiff upon his journey."

To the giving of these instructions the defendant excepted. It also offered seven instructions of its own, two of which were given; the rest were refused. There was a verdict for the plaintiff for $8,000 damages, and judgment having been rendered on the verdict, the defendant obtained a writ of error from one of the judges of this court.

*Wm. H. Travers* and *Edmund Pendleton,* for plaintiff in error.

*J. R. Tucker* and *W. A. Anderson,* for defendant in error.

LEWIS, P., after stating the case, delivered the opinion of the court.

The principal questions raised in this court relate to the refusal of the circuit court to give the jury certain instructions offered by the defendant. No objection is made to the instructions which were given at the instance of the plaintiff; nor are they open to objection, since they literally propound the law as it has been declared by this court, and in numerous decisions of courts of last resort in England and in this country. *Balt. & Ohio R. R. Co.* v. *Nightman's Adm'r,* 29 Gratt. 431; *Same* v. *Noell's Adm'r,* 32 Id. 394; *Phila. & Reading R. R. Co.* v. *Derby,* 14 How. 468; *Indianapolis & St. Louis R. R. Co.* v. *Horst,* 93 U. S. 291; 2 Wood's Railway Law, § 301, p. 1074, and cases cited.

The first instruction offered by the defendant, and refused, is as follows:

"Although the jury believe from the evidence that the injury complained of in the declaration was inflicted by the defendant upon the plaintiff, in the manner therein set out, yet the plaintiff is not entitled to recover if they shall further believe from the evidence that he was in a feeble and infirm state of health, and such as would have prevented a prudent man from running the risk of travel; and, that but for his diseased and helpless condition, the plaintiff would not have suffered the injury so inflicted by the defendant."

This instruction was rightly refused. In the first place, it is not relevant to the evidence in the case. It presents an unwarranted hypothesis to the consideration of the jury, and if a verdict for the defendant had been returned upon such hypothesis, it would have been the duty of the court, upon the motion of the plaintiff, to set it aside. There is nothing even tending to show that the plaintiff was in such condition as to render railroad travel on his part imprudent, much less that his condition was "helpless." The most the evidence shows on that point is that the plaintiff had been suffering for several months with chronic rheumatism of the hip and of the muscles and tissues therewith connected. But it also shows that at the time of the accident he was nearly well; that for some time prior thereto he had been going about, and that the day before he had been engaged in setting out and pruning fruit trees in his orchard; that he used one crutch in walking (generally as a staff), and was rapidly getting well when the accident occurred. So that the instruction was calculated to mislead the jury, and it would have been error to have given it. The office of an instruction is to aid the jury in arriving at a correct conclusion upon the evidence in the case, not to mislead or perplex them by laying down merely abstract propositions or by submitting questions in relation to which there is no evidence. *Wiley*

v. *Givens,* 6 Gratt. 277; *Pasley* v. *English,* 10 Id. 236; *Boswell's case,* 20 Id. 860; *Central Lunatic Asylum* v. *Flanagan,* 80 Va. 110; *Priest* v. *Whitacre,* 78 Id. 151; *Michigan Bank* v. *Eldred,* 9 Wall. 544; *Railroad Company* v. *Gladmon,* 15 Id. 401.

The instruction is also erroneous in another point of view. It not only assumes that the plaintiff was helplessly infirm, but that such assumed infirmity was equivalent to contributory negligence on his part, which bars a recovery. It thus ignores an important qualification of the general rule as to the legal effect of contributory negligence, which is this, that though the plaintiff may have been guilty of negligence, and although that negligence may in fact have contributed to the accident, yet if the defendant could, in the result, by the exercise of ordinary care and diligence, have avoided the mischief which happened, the plaintiff's negligence will not excuse him. This qualification was clearly stated in the case of *Tuff* v. *Warman,* 5 C. B. (N. S.) 573, so often referred to, and is the established doctrine in England, and certainly in this State. Indeed, it is nothing more than the application of the maxim, *sic utere tuo ut alienum non laedas.* Broom. Leg. Max. 385; *Radley* v. *London & Northwestern Railway Company,* L. R. 1 App. Cas. 754; *Richmond & Danville R. R. Co.* v. *Anderson's Adm'r,* 31 Gratt. 812; *Dun* v. *Seaboard & Roanoke R. R. Co.,* 78 Va. 645; *Farley's Adm'r* v. *Richmond & Danville R. R. Co.,* 81 Id. 783; *N. Y., P. & N. R. R. Co.* v. *Kellam's Adm'r* (reported in this volume).

Hence, even if the conclusion could be fairly drawn from the evidence that it was imprudent on the part of the plaintiff to travel in his then condition, and even if such imprudence could be said to be contributory negligence, and might have been so found by the jury upon the evidence before them, yet if, notwithstanding the plaintiff's negligence, the accident which caused the injury could

have been avoided by the exercise of ordinary care on the part of the defendant, the latter is liable.

Nor are these the only objections to the instruction. There is another equally fatal. To defeat an action on the ground of contributory negligence, there must have been a causal connection between the negligence of the plaintiff and the injury complained of—that is to say, the plaintiff's negligence must have been the proximate cause of his injury; or, in the language of a philosophical writer, "to make the act of a moral agent the juridical cause [which means, he says, the proximate cause] of an event, the act in question must be of such a character that, if not interrupted by causes independent of the actor's will, or by the intervention of other persons, it will, under ordinary circumstances, produce the event in question." Whart. Neg. § 302.

This principle is decisive here; for obviously there was no connection, and in the nature of things could not have been, between the physical condition of the plaintiff and the injuries produced by the collision of the train upon which he was travelling when injured. As well might it be contended that a passenger suffering with a bronchial trouble, which renders travel on his part imprudent, and whose leg is broken in a railroad accident, cannot recover damages for his injury until he has first formally satisfied the jury that the injury was not caused by the condition of his throat or lungs; yet such, in substance, is the contention of the plaintiff in error.

The principle above alluded to is illustrated by a recent case in the supreme court of Pennsylvania. There the plaintiff, while riding on the rear platform of a crowded street-car in the city of Philadelphia, was injured by being struck in the back by the pole of a following car. The defense was that the plaintiff, by reason of his standing on the platform, was guilty of contributory negligence, which

barred the action.   But the defense was not sustained. The court said : "When the plaintiff was struck, his post was a condition, but not a cause of his injury.   It neither lessened the speed of the car he was on, nor increased that of the other; his presence was not a cause of the broken chain and the reckless driving of the following car." *Passenger Railway Company* v. *Boudron,* 92 Pa. St. 475.

In *Sawyer* v. *Dulany,* 30 Tex. 479, the plaintiff, a pregnant woman, was injured and a miscarriage produced by the negligent overturning of a stage-coach in which she was travelling.   The defendants contended that they were not responsible for injuries resulting from the peculiar condition of the plaintiff, but only for such as would have ordinarily resulted to a person not so circumstanced.   But to this the court answered that carriers of passengers do not undertake to carry persons of strong constitutions only, and that their liability depends not upon the physical ability of their passengers, but upon their own conduct. Accordingly the judgment in favor of the plaintiff was affirmed.

Nor is there anything in *Passenger Railway Company* v. *Eckert* (much relied on by the plaintiff in error) in conflict with these views.   The case was decided by the supreme court of Pennsylvania during the last year, and is reported in 2 Cent. Rep. 791.   That, too, was a case in which a pregnant woman sustained an injury which resulted in a miscarriage, and of which she complained.   The injury was caused by the derailment of a street-car on which she was riding.   At the trial it was proved that she was in delicate health at the time of the accident; that for a number of years prior thereto she had been treated for womb disease; that she had hemorrhage of the womb, and had been neglected by a physician in a former confinement. It was, therefore, left to the jury to say whether or not, under these circumstances, she could have prudently rid-

den on the car, and whether her injury was caused by the ordinary running of the car, or by the casualty that happened. "The law," said the court, "did not require her to expect extraordinary events, but only the effects of the ordinary running of the road; nor did it require her to be in such a bodily condition as to be able to withstand anything more than the effects of the usual and ordinary running of the cars." There was a verdict for the plaintiff, which was sustained by the supreme court.

Now, there is a broad distinction between that case and the present. In the former the circumstances were peculiar. There the jury might have found that the plaintiff (a delicate woman, four or five months advanced in pregnancy, and predisposed to miscarriage) was not in a condition to have prudently travelled at all; that her act in taking passage in a street-car was of itself negligence, and, therefore, that she was the author of her own misfortune. In other words, there may have been a causal connection between her own act and the event that happened, namely, her miscarriage. But very different is the present case. Here the rheumatism of the plaintiff, who was quietly seated in a Pullman car, could not by possibility have brought about or contributed to the breaking of his thigh-bone in the collision that occurred. A causal connection between his condition, or any act of his own, and the injuries he received, was wholly wanting, and there was nothing in the case upon which the jury could have found otherwise. Were the position well taken for which the plaintiff in error contends, the aged and infirm would be less protected while travelling on a railroad than the robust and strong. But the position is not well taken, and further discussion of it is unnecessary.

The next question relates to the refusal of the circuit court to give to the jury the following instruction:

"If the jury believe from the evidence that the seat of

the injury caused by the defendant to the plaintiff was the right hip, and that before and at the time of the said injury the said hip was in a diseased condition and liable to injuries that in a sounder condition of health would not have been inflicted by the collision proven in the cause, they are at liberty to consider these facts in their estimate of compensation for damages inflicted by the defendant upon the plaintiff in the manner set out in the pleadings."

This instruction is obnoxious to an objection already considered in connection with the first, namely, that its tendency was to mislead the jury, because not relevant to the evidence. *Michigan Bank* v. *Eldred*, 9 Wall. *supra*. There was no evidence tending to show that the seat of the injury was the hip, or that prior to the casualty the hip was *diseased*. On the contrary, the evidence shows that the injury consisted in breaking the right thigh-bone, and that the plaintiff, though he had been suffering with rheumatism of the hip, was nearly well when the injury occurred.

The only remaining assignment of error in the petition is the refusal of the circuit court to give the following instruction:

" The court instructs the jury that a railroad company is bound, as to passengers, to make such arrangements for their transportation as are suitable to preserve from harm reasonable and prudent men in possession of their ordinary senses and capacities; and there is no obligation to provide arrangements for transportation suitable to the protection of persons falling below that standard, physically or mentally."

This instruction announces a mere abstract proposition having nothing to do with the case before the jury, and in regard to which it is sufficient to say the court did not err in refusing to give it.

In the oral argument at the bar, objection was also made

to the judgment of the circuit court, on the ground of a variance between the allegations in the declaration and the proofs. The contract declared on was for the transportation of the plaintiff from Lock Laird station, in Rockbridge county, to Hagerstown, in the State of Maryland; whereas the proofs show that at the time the plaintiff took the train at the above-mentioned station, he told the conductor of the train he was going to New York; that he had no ticket, as no "through tickets" 'were to be had at the said station, and that the conductor thereupon informed him that he could pay local fare to Luray, in Virginia, or to Hagerstown, in Maryland, and that he (the conductor) would procure for him at Luray a through ticket to New York; that the conductor did purchase for him at Luray a ticket from that point to New York, and that the casualty occured after the train left Luray, and before it reached Hagerstown. This shows, it is contended, that the plaintiff when injured was travelling on a different contract from that mentioned in the declaration, and that this variance is fatal.

A sufficient answer, however, to this objection is, that the variance, if there was a variance, was not taken advantage of in the proper mode and at the proper time. The mode of taking advantage of a variance in such a case is by moving to reject the evidence when offered, or by moving the court to instruct the jury to disregard it after it has been received. 4 Min. Insts. 733. But this was not done in the court below, and it is too late now to raise the objection here.

It is true the defendant moved the court to instruct the jury that the plaintiff was not entitled to recover if they believed from the evidence that the contract under which he was being carried at the time of the injury was not made in Rockbridge county, and that the court refused to so instruct them. But the instruction did not fairly raise,

even if it was intended to raise, any question of variance, and it was rightly refused, because its subject-matter was proper for a plea in abatement, and no such plea had been interposed.

We find no error in the judgment, and the same is affirmed.

JUDGMENT AFFIRMED.