## Richmond.

## VA. MID. R. R. COMPANY v. WHITE.

### FEBRUARY 16th, 1888.

1. RAILROADS—*Negligence—Persons on track—Instructions.*—An instruction founded on the engineer's duty after discovering a person walking on the track, but ignoring his duty to exercise ordinary care to discover that person's dangerous position, is improper.

2. IDEM—*Licensee.*—And so likewise is an instruction founded upon the idea that a person is a trespasser, who is walking on the track within city limits and for a long time, with the company's acquiescence, the common pathway of the public.

3. IDEM—*Rule of liability.*—Mere negligence will not disentitle plaintiff to recover, unless it were such that, but for that negligence, the misfortune could not have happened; nor if the defendant might, by the exercise of care on his part, have avoided the consequence of the carelessness of the plaintiff.

4. IDEM—*Instructions.*—Where instructions already given cover the entire case and properly submit it to the jury, it is not error to refuse to give others even though properly stating the law. *Lunatic Asylum* v. *Flanagan,* 80 Va., 110.

5. IDEM—*Negligent killing—Case at bar.*—In action by decedent's administrator against railroad company, it was proved that the only outlet from the house whence decedent came, was by way of company's tracks, that had long been, with company's acquiescence, the common pathway to the public to and from the house and its vicinity to Lynchburg; that decedent stepped off of side track on to the main track to avoid a material train, and was killed by a yard engine and tender not visible when he came on to the track, being around a bluff, but was backing rapidly within city limits and against its ordinances in the direction decedent was walking; and that the engineer failed to look out, blow the whistle or give any warning:

HELD:

The defendant's servant's negligence was the proximate cause of the

killing, and plaintiff is entitle to recover though decedent may
not have been entirely free from fault.

Error to judgment of corporation court of city of Lynch-
burg, rendered June 24th, 1886, in an action of trespass on
the case wherein R. H. Drummond, sheriff of Amherst
county, and as such, administrator of W. H. White, deceased,
was plaintiff, and the Virginia Midland Railway Company
was defendant. The verdict and judgment were for the plain-
tiff, and the defendant company, having excepted to various
rulings of the court during the trial and moved to set aside
the verdict and be awarded a new trial, the evidence being
certified by the court, obtained a writ of error and *supersedeas*
from one of the judges of this court. Opinion states the case.

*Kirkpatrick & Blackford*, for the plaintiff in error.

*Edward S. Brown, P. W. McKinney*, and *J. P. L. Fleshman*,
for the defendant in error.

LEWIS, P., delivered the opinion of the court.

This was an action in the corporation court of the city of
Lynchburg, brought under the statute, to recover damages for
the alleged negligent killing of the plaintiff's intestate by the
defendant, the Virginia Midland Railway Company. The
deceased was killed by being run over by a yard engine of the
defendant, in its yard, within the corporate limits of Lynch-
burg, on the 12th of May, 1885. At the trial there was a ver-
dict for the plaintiff for $5,000 damages; whereupon the
defendant moved to set aside the verdict and for a new trial,
on three grounds: (1.) Because the verdict was contrary to
the law and the evidence; (2.) because the court had mis-
directed the jury; and, (3.) because the damages awarded
were excessive. But the court overruled the motion, and gave

judgment on the verdict; whereupon the defendant obtained a writ of error and *supersedeas*.

The bill of exceptions contains a certificate of the evidence, which was conflicting and all of which was parol, so that, in passing upon the questions of fact in the case, we can look to the evidence of the plaintiff only. And, unless the verdict, when viewed in this light, be plainly wrong, the judgment must be affirmed, provided the exceptions to previous rulings of the court in the progress of the trial be not well taken.

It appears from the record that on the morning of the day on which he was killed, the deceased went to the house of a Mr. Field, in Lynchburg, where he had engaged to do certain work as a brick mason. He was a resident of Amherst county, and went to Lynchburg the previous day. He was a brother-in-law of Mrs. Field, and frequently visited her. Field was an employee of the defendant company, and occupied one of its houses, rent free, where he boarded a number of the company's hands. The house is situate on the company's land, at the foot of a steep bluff. A short distance north of it, and around the bluff, is the railroad bridge across James river, the northern boundary at that point of the city, and about a quarter of a mile south of it, is the Union depot in the city.

The house fronts immediately on the company's tracks; at which point there are four tracks—three side tracks and the main track. There is no other footpath from the house, nor indeed from the railroad bridge to the depot, than over these tracks, which, it seems, have been used for years by pedestrians going from the Field house and other places in its vicinity, to the depot and other business portions of the city. *This user by the public has been with the acquiescence of the company.* Without passing over the tracks, the Field house is virtually inaccessible.

Beyond the curve, and near the bridge above mentioned, is a water tank, which, owing to the bluff, is not in sight from a point on the tracks opposite the Field house. Soon after

arriving at the house, the deceased inquired for Mr. Field, and was informed that he had gone down the track in the direction of "the sand-house," near the depot; whereupon he started out to find him. He stepped on one of the side tracks in front of the house, and walked in the direction of the sand-house, but had not gone far, when seeing a freight train moving northward and approaching him on the same track, he got upon the main track, and after proceeding on the latter track about seventy yards, he was suddenly struck and instantly killed by a yard engine and tender, moving backwards in the direction he was walking, the tender being in front. This engine was at the water tank above mentioned when the deceased got upon the track at the Field house, and consequently was not then visible to him. And, according to the evidence for the plaintiff, no signal was given by ringing a bell or otherwise, to warn persons of its approach, either when it left the water tank, or in coming around the curve, or afterwards at any time before the deceased was killed.

One of the plaintiff's witnesses, who says it "thundered" by him, about thirty or forty yards from the deceased, testifies as follows: "I do not think the engineer and fireman on the engine were aware that he (the deceased) was on the track. I don't think they saw him. I did not see them looking out towards him. There was no watchman on the tender, and neither bell was rung nor whistle blown. I had to be pretty peart myself to get out of the way." The same witness also testifies: "I knew the track pretty well. Persons were in the habit of passing along it very frequently. They passed *mighty nigh as much as on the streets*. Persons from Amherst were in the habit of passing along the tracks." He also said: "I know the position of the Field house. I do not suppose it is more than a foot and a half from the step to the outside rail. There was no entrance to the house except from the track, that I know of, because there is nothing but a bluff on the other side. It has been the custom of people to pass along that

track as long as I can recollect. I was well acquainted with the deceased. I think his ordinary faculties were perfectly good. As to his hearing, I have talked to him very often, and I never talked to him louder than to any other person."

There is some conflict in the evidence of the plaintiff as to the speed at which the engine was backing when the deceased was killed. Several of the witnesses say it was moving rapidly, one of them estimating its speed at about the rate of 18 or 20 miles an hour, another at about 10. The latter estimate, we think, is established as the correct one by the preponderance of the testimony.

One of the general ordinances of the city of Lynchburg provides as follows: "Every locomotive moving upon any railway track in the city shall have attached thereto a bell weighing at least twenty pounds, which shall be rung so long as such engine is moving in the city, nor shall any such locomotive be moved at a greater speed than four miles an hour."

This summary of the principal facts established by the plaintiff's evidence shows a clear case for the plaintiff, unless the deceased was guilty of such contributory negligence as to defeat a recovery. The defendant contends that he was. It contends that it was negligence on his part not to look and listen for the approaching engine; but there is no evidence that he did not. The engine was not in view when he got on the side track, and the evidence does not show that it had rounded the curve and come in view when he left the side track and got on the main track. He had a right to rely on the performance of their duties by the agents of the defendant, and to suppose that in a frequented place within the city limits, as the evidence shows the company's tracks in the vicinity of the fatal spot to have been, they would obey the ordinance above mentioned, both as respects the signals and the speed it prescribes. By their failure to do so, they doubtless lulled him into a fatal belief of security, and there can be but little doubt that had they performed their duties, the deceased would not have been injured.

It was gross negligence on the part of the servants of the company in charge of the yard engine to have neglected to give the necessary signals, and to have moved a backing engine with a tender before it at the high rate of speed at which the evidence shows the engine was being propelled when the deceased was killed. They ought to have exercised greater precaution to avoid danger to human life in such a locality, and for their failure to do so the company is liable. In other words, their negligence was the proximate cause of the injury, even though the deceased may not have been entirely without fault. *Norfolk & Petersburg Railroad Co.* v. *Ormsby*, 27 Gratt., 455; *Railroad Co.* v. *State*, 29 Md., 421.

It is contended, however, that the court below erred in refusing to give to the jury certain instructions asked for by the defendant, and in giving certain other instructions in lieu thereof. The defendant asked for eight instructions, all of which, except the second, were refused. The first is as follows:

"If the jury believe from the evidence that the plaintiff's intestate was killed by the engine of the defendant company while he was walking on one of the tracks of the defendant in its yard in the city of Lynchburg, the plaintiff cannot recover for such injury unless he proves to the satisfaction of the jury that the engineer controlling the engine by which the deceased was killed, *after he discovered the danger* in which the deceased was placed, could, by the use of ordinary care, have prevented the accident."

This instruction was properly refused. Its vice is that it ignores the duty of the engineer, or of those who were controlling the engine, to have exercised ordinary care and diligence in keeping a lookout to avoid injuries to the deceased, and, if given, would have in effect told the jury, that notwithstanding the engineer may have been guilty of gross negligence in running the engine, yet, the company was not liable, if after discovering the deceased, he used ordinary care to prevent the

accident. Such is not the law. It was the duty of the engineer to use ordinary care, not only after discovering the dangerous position of the deceased, but in keeping a lookout to warn him of the approaching danger. The law applicable to such a case is accurately laid down in *Tuff* v. *Warman,* 5 C. B. (N. S.), 573, where the qualification of the general rule relating to the effect of contributory negligence, is thus stated: "mere negligence or want of ordinary care or caution, would not, however, disentitle him (the plaintiff) to recover, unless it were such that but for that negligence or want of ordinary care and caution, the misfortune could not have happened; nor if the defendant might, by the exercise of care on his part, have avoided the consequence of the neglect or carelessness of the plaintiff."

This statement of the law, though it has been criticised and disapproved by some courts, notably in *Murphy* v. *Deane,* 101 Mass., 455, has received the sanction of the House of Lords in subsequent cases, and is undoubtedly the established doctrine of this court. *Richmond* & *Danville R. R. Co.* v. *Anderson's Adm'r,* 31 Gratt., 812; *Dun* v. *Seaboard & Roanoke R. R. Co.,* 78 Va., 645; *Shenandoah Valley R. R. Co.* v. *Moose,* 83 Va., 827. And if in any of the decisions of this court there be any language in apparent conflict with the doctrine, such language must be construed with reference to the particular circumstances of the cases with which the court was dealing.

The second instruction asked for by the defendant was given by the court, and will be referred to presently.

The third instruction asked for is as follows: "The defendant corporation has the legal right to the full, free, exclusive, and uninterrupted use of its tracks and yards for the conduct of its business, and strangers who go into said yards and upon such tracks for their own convenience, assume all the risks of injury which may arise therefrom, and are bound to use the highest degree of care and caution to avoid such injury; and if so injured, no damages can be recovered therefor, unless it

be shown that the defendant company *after it discovered the danger*, could have prevented the injury by the use of ordinary care and diligence."

The last proposition contained in this instruction is obnoxious to the objection already indicated in respect to the first instruction, and is, moreover, objectionable in another point of view, which is this, namely, that it in effect assumes that the deceased in entering the yard and walking on the tracks of the defendant, was a stranger, by which evidently was meant a trespasser. But the evidence shows that this is a mistaken idea; so that in this particular the instruction was not relevant to the case, and an irrelevant instruction ought not to be given. *Railroad Co.* v. *Moose, supra,* and cases cited.

The deceased was not a trespasser, but a licensee; and whatever duty a railroad company may owe to a trespasser on its tracks, (as to which see *Railroad Co.* v. *Harman's Adm'r*, 83 Va., 553,) a different rule applies to a licensee. As to the latter, the rule is that the company is bound to exercise ordinary care and prudence toward him, for the license creates this duty. Beach, Cont. Neg., (sec. 17) p. 54.

This subject was very fully and ably considered by the supreme court of Wisconsin in the recent case of *Davis* v. *Chicago and· N. W. R'y Co.,* 58 Wis., 646; (S. C., 15 Am. & Eng. R. R. Cas., 424). In that case the plaintiff, while on the premises of the defendant company as a licensee,. was injured by the explosion of a steam boiler. The explosion was occasioned by the negligence of the defendant's agents, and it was held that the action was maintainable. The court, after an examination of many of the authorities, recognized the rule above mentioned, saying that in the case of a mere trespasser, the company or its servants have no cause to anticipate that he will be on its track or in the way of danger, and therefore that a mere neglect to keep a lookout may not be such neglect as will render the company liable for running upon and injuring him. But that in a case where the company knows that a

portion of its premises is constantly used by the public with its acquiescence as a footway, its servants are charged with notice that it will be so used, and they cannot, without fault, proceed in a manner which must necessarily be dangerous to such persons, and that a plaintiff injured by the failure of the company's servants to observe this duty, need not aver and prove gross negligence on their part.

And referring to the case of *Townley* v. *Railroad Co.*, 53 Wis., 626, which was an action to recover damages for injuries caused by the negligent running of a switch engine, it was said: "It was taken for granted in that case that although the plaintiff was on the defendant's track simply by its license or acquiescence, yet that it owed a duty to such licensee to exercise ordinary care in running its trains and engines, and that if an injury was inflicted by reason of the want of such ordinary care, then the defendant was liable."

It was also said—and the remark is applicable to the present case, (Acts 1883–4, p. 705, sec. 7,)—that a statute making it an offence to walk along the track of a railroad company, can have no effect in an action for damages against the company, where the proof shows that the law has been constantly violated with the knowledge and acquiescence of the company— certainly not as against a licensee who is injured by the carelessness of the company's servants. And in these views we fully concur.

The fourth, fifth, sixth, and seventh instructions which were asked for and refused, are faulty for reasons already stated. The court therefore did not err in refusing to give them.

The eighth is as follows: "The court instructs the jury that the plaintiff in order to recover in this cause, is under the burden of proving that the accident, which resulted in the death of Wm. H. White, was the result of the failure of the defendant company to use ordinary care and vigilance to prevent the injury.

"If the defendant relies for its defence on the contributory

negligence of the plaintiff, the burden of proving such contributory negligence rests on the defendant company.

"If the plaintiff claims a right to recover in this case, notwithstanding the contributory negligence of said White on the ground that the defendant company could have prevented such accident, notwithstanding such contributory negligence, then the burden of proving that the accident could have been so avoided is on the plaintiff."

There is certainly nothing in this instruction which states the law too favorably for the defendant, and it is not easy to see why it should have been refused. The court, however, did refuse to give it, and its refusal would undoubtedly be ground for reversing the judgment, but for the fact that in the second instruction asked for by the defendant, and which was given, the jury were substantially told what was asked for in the eighth instruction, and in even more favorable terms for the defendant. So that by the refusal of the court to give the last-mentioned instruction, the defendant has not been prejudiced. "It is well settled that when instructions are given which cover the entire case, and which properly submit the case to the jury, it is not error to refuse to give others, even though in point of law they are correct, though it is safest for the court to give instructions asked for when they correctly propound the law, and are relevant to any evidence in the case." *Central Lunatic Asylum* v. *Flanagan*, 80 Va., 110; *Laber* v. *Cooper*, 7 Wall., 565; *Railroad Co.* v. *Horst*, 93 U. S., 291.

The instructions given by the court in lieu of those which were offered by the defendant and refused, propound the law, when taken as a whole, in accordance with the views already expressed, and need not be more particularly referred to or considered.

It only remains to say that the court did not err in refusing to set aside the verdict, on the ground that the damages awarded were excessive. The evidence shows that the de-

ceased left a widow and a number of infant children, and the question as to the *quantum* of damages was a matter peculiarly within the province of the jury. In such a case, therefore, the verdict ought not to be set aside, unless the damages awarded are so excessive as to warrant the belief that the jury were influenced by prejudice or partiality, or were misled by some mistaken view of the merits of the case. *Farish & Co.* v. *Reigle,* 11 Gratt., 697, 722; *Benn* v. *Hatcher,* 81 Va., 25; *Borland* v. *Barrett,* 76 *Id.,* 128; *Railroad Co.* v. *Taffe,* 37 Ind., 373. The judgment is affirmed.

RICHARDSON, J., dissented.

JUDGMENT AFFIRMED.