## Staunton.

NORFOLK & WESTERN RAILROAD CO. v. WILSON.

SEPTEMBER 12th, 1893.

1. RAILROADS—*License—Duty of company.*—Where the public has been in the habit of crossing the railroad track on foot at a certain place for years without objection from the company,

HELD :

> Such acquiescence amounts to a license and imposes on the company the duty of taking reasonable care to avoiding injuring pedestrians.

2. IDEM—*Duty of persons crossing.*—Such pedestrians are bound to take ordinary precautions for their own safety, even if there was any negligence on the company's part.

3. IDEM—*Injury to persons on the track—Case at bar.*—One crossing railroad at a place where the public is licensed to cross, who knowing that he is on one of the main tracks over which trains pass at all hours, fixes his attention upon a train on the other track which he has changed his course to avoid, and takes no precautions in looking out for trains upon the track on which he is walking, is guilty of such negligence as defeats his recovery for injuries from being struck by such train.

Argued at Wytheville.    Decided at Staunton.

Error to judgment of circuit court of Montgomery county, rendered December 6, 1892, in an action of trespass on the case, wherein J. W. Wilson was plaintiff, and the Norfolk and Western railroad company was defendant. The defendant demurred to the evidence, and the jury thereupon conditionally assessed the plaintiff's damages at $680. The circuit court gave judgment on the demurrer for the plaintiff, to which judgment the company obtained a writ of error from one of the judges of this court. Opinion states the case.

*Phlegar & Johnson*, for plaintiff in error.

*Hoge & Hoge* and *Penn & Cocke*, for defendant in error.

LEWIS, P., delivered the opinion of the court.

The plaintiff was struck by a freight train on the defendant's tracks at Christiansburg, and this action was brought to recover damages for the injuries thus inflicted. The company's tracks at this point run east and west, and there are two main tracks—one for east-bound trains, the other for west-bound trains—and there are one or more sidings. The accident occurred about forty or fifty feet east of the depot building, which is on the south side of the tracks.

The plaintiff's account of the matter is, that immediately before the accident he started to cross the tracks, on his way to his boarding-house on the north side of the railroad; that after he had partially crossed, he observed a west-bound train moving on the northern track, and deeming it too near for him to safely cross in front of it, he turned and stepped back on the middle or "east-bound" track; that as he did so he looked west to see if the track was clear, and no train was in sight between him and a certain curve in the road about four hundred yards west of him; that he then walked diagonally across the middle track to the southern ends of the cross-ties, upon which he slowly walked eastward, at the same time "*watching the west-bound train*, and waiting for it to get out of his way"; and that he had taken but a few steps when he was struck by the engine of an east-bound freight train and seriously injured.

He says if the whistle was sounded or the bell rung before he was struck he did not hear it. But two of his own witnesses say the whistle blew "about the depot;" and while a third, who was an eye-witness of the accident, says no signal was given, he is equally positive that the train had rounded

the curve and was in full sight and hearing when the plaintiff turned to cross the middle track.

The evidence for the defendant tended to show that an alarm whistle was sounded about the time the engine reached the west end of the depot, or more than fifty yards from the place of the collision. The train was running twenty-five or thirty miles an hour.

About fifty yards west of the depot is a highway grade crossing, and a rule of the company provides that "the engine bell must be rung for a quarter of a mile before reaching every road crossing at grade, and until it is passed," which rule was not observed in the present case. The plaintiff, however, was not at this crossing, but over a hundred yards east of it.

It appears that for many years before the accident the public had been in the habit of crossing the railroad on foot at the place of the accident without objection by the company; that the spaces between the ties were filled with cinders; and that there was a wide and well-beaten path there. This acquiescence amounted to a license, and imposed upon the company the duty to exercise reasonable or ordinary care to avoid injuring pedestrians crossing at that point. *Va. Midland R. R. Co.* v. *White's adm'r*, 84 Va., 498; *N. & W. R. R. Co.* v. *Carper*, 88 *Id.*, 556; *Byrne* v. *N. Y. Central, &c., R. R. Co.*, 104 N. Y., 362; *Troy* v. *Cape Fear &c., R. R. Co.*, 99 N. C., 298; 6 Am. St. Rep., 521.

But the plaintiff was, nevertheless, bound to take ordinary precautions for his own safety, and the necessity for his doing so was not relieved by negligence, if there was any, on the part of the company. It was his duty to listen and to keep a constant lookout for approaching trains, to make sure the track was safe. He admits he knew he was on one of the main tracks over which east-bound trains pass at all hours; and had he exercised the vigilance the rule in such a case requires, instead of fixing his attention on the west-bound train after he had changed his course to avoid it, he would not have been

injured. It is unnecessary, therefore, to decide whether or not the company was negligent, for, be that as it may, the negligence of the plaintiff defeats a recovery. *Railroad Co.* v. *Houston*, 95 U. S., 697; *Marks' adm'r* v. *Petersburg R. R. Co.*, 88 Va., 1; *Hogan's adm'r* v. *Tyler, Receiver*, 17 S. E. Rep., 723.

JUDGMENT REVERSED.