FARLEY v. CINCINNATI, H. & D. R. CO.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1901.)

No. 899.

1. CARRIERS—RELATION OF CARRIER AND PASSENGER—HOW CREATED.

The relation of carrier and passenger, which will bring a carrier under the obligation to exercise the high degree of care and caution for the safety of a person imposed by such relation, can only be created by contract, express or implied.

2. SAME—PERSONAL INJURY—PASSENGER OR TRESPASSER.

It was the custom of a railroad company to have a mail car, which went out with a train at 8:45 p. m., supplied with gas and ice, and equipped for the run, and standing near the express station, at about 6 o'clock, where it was boarded by the mail clerk, who was to have charge of it for the run. On one occasion the train with which the car came in was late, and did not arrive until about 6:30, and the clerk boarded the car immediately on its arrival at the station, before it had been cut out from the train or equipped for the succeeding run. While it was being switched into the yards, for the purpose of being so equipped, a coupling broke, and it collided with other cars, as a result of which the clerk was thrown down and injured. *Held*, in an action to charge the railroad company with liability for the injury on the ground of negligence, there being no evidence that defendant, through any officer or agent, had actual knowledge of plaintiff's presence in the car, that he could only recover by proof of a custom of the clerks to board the car at places other than the usual one at the express station, which was known to defendant, or was so general that defendant was chargeable with notice of it, so that it must have impliedly agreed to receive plaintiff as a passenger at the time and place where he entered the car; and that evidence that plaintiff and another clerk had, on three occasions during the preceding four years, boarded the car at other places, "wherever it could be found," was not sufficient to establish such custom, it not being shown that defendant had any knowledge of such facts.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

This action was brought to recover damages for a personal injury, suffered by plaintiff in error on the 24th day of November, 1898, while in the employ of the United States as a postal clerk in the railway mail service. His work as such clerk was in a post-office car provided for the purpose, and consisted in the reception, assortment, and distribution of mail matter in said car, on what is called the "run" between Cincinnati, Ohio, and Indianapolis, Ind. This mail car, in which plaintiff in error discharged his duties, was a combination mail, express, and baggage car, with three apartments, and was carried in trains of the defendant in error operated between said cities. These trains departed from Cincinnati at 8:45 p. m., arrived at Indianapolis at 12:45 a. m., left Indianapolis at 3:45 p. m., and arrived in Cincinnati at 7:30 a. m. the next morning. Plaintiff had been in the railway mail service fourteen years before the accident, and for more than two years on the run between Cincinnati and Indianapolis. Two clerks were engaged in the service on this line, working in turns during alternate weeks. The other clerk was John B. Connor, who had been engaged in the service for a period of about fourteen years, and on this particular run about four years, preceding the accident. On the day of the accident there had been a wreck on the road, and plaintiff in error came in to Cincinnati that morning on another train. In the evening he went to the express office, about the usual hour, and inquired at the office of the defendant in error about his car, and was told that it would be in on train 41, which was due at 6 o'clock, but which was in fact 24 minutes late. When train 41 arrived in the depot with the mail car attached, plaintiff in error boarded his car immediately, and proceeded to change his clothes and

prepare for the work to be done. The car had just come in from the north as part of the train, from which it had not been disconnected at the time plaintiff in error entered. When the post-office car had been separated from the train, it was switched up into the yard for the purpose of being furnished with gas and otherwise prepared for the trip. While on this switching ran the coupling which attached the car to the switch engine broke, and this car collided with other cars. As a result of this collision, it is alleged in the petition that the plaintiff in error was knocked down against a table, and upon the floor of the car, and received severe injuries on his shoulders, arms, and in his leg and spine. The action is grounded on the charge that the collision was caused through the negligence of the defendant, its agents and servants. The answer to the petition puts in issue the general charges of the petition, including the charge of negligence, and specifically denies that the plaintiff in error was, at the time of the accident, in the line of his duty as railway postal clerk, or that he was rightfully on the car, which, as the answer states, was at the time in the switching yard of the defendant.

These mail clerks were introduced by the plaintiff in error, and were the only witnesses who testified in the case. They agree in the statement that it was customary for the railway mail clerks to enter the post-office car at the platform of the express office, where mail and express matter were delivered and placed on board the car. In the ordinary course of business, when the car was boarded by the postal clerks at the express office, and at the usual time, it had already been supplied with gas, ice, and was lighted, ready for the trip, and was carried from that place to the depot, and attached to the train in proper position for the run. Although the train did not leave Cincinnati for Indianapolis until 8:45 p. m., the mail clerks, as a rule, went on duty about 6 o'clock p. m., in order to arrange the car for the first delivery of mail, which came from the post office to the express station at 7 o'clock p. m.

At the close of the plaintiff's evidence, the court, on motion, directed a verdict in favor of the defendant, to which exception was duly taken. The case was afterwards submitted to the court on motion for a new trial, and, in overruling this motion, the learned circuit judge, after making certain observations in relation to the case, not material to be now repeated, went on to say: "A well-established usage and custom, shown by the evidence, required the clerk on duty to board the postal car at the express platform in the defendant's yards at Cincinnati a few minutes before or after six in the afternoon of each day, where the mail would be delivered to them about 7 o'clock, and at 7:15 the car would be pulled over to the depot and put into the train. The car, when boarded by the postal clerk at the express platform, would be gassed, lighted, and iced, and prepared to go on the trip. It was well understood by the railway mail clerks, the post-office employés who delivered the mail, and the railroad men who assisted in placing the mail in the postal car, that the car would be at the express platform as early as 6 o'clock. Connor, in his examination in chief, testifies as follows: 'Q. Well, Mr. Connor, when you would go down there, you say you would find this car at the express office. Did it ever happen in your fourteen years, or during the four years you were on this run, that the car was not at the express office? A. Yes, sir; it happened on two occasions. Q. Two occasions, with you? A. Yes, sir. Q. Where would you find it at these times? A. One night there was a car short, and it came in on the day train, and we took it back, and I believe another time there was something the matter with one of the cars, and they substituted another car for it. Q. When the car was not at this place, where would you go? A. Well, I would go wherever I could find it. I got it in the depot on one occasion. Q. Do you know from your personal observation, in the railway mail service for fourteen years, what has been the custom on that road, in those yards, of the railway postal clerks, in that particular, as to getting on the cars when the time come to get on them? A. No, sir; I cannot answer that, any more than I would get in there wherever I would find the car. Q. Have you seen other postal clerks, as it come under your knowledge and observation on other runs than this one? A. They generally do that; yes, sir.' Plaintiff testifies, in a general way, that it was his practice to get on the postal car wherever he found it, and that in the course of his

service he got on it at other places than at the express platform, but he gives no instance of having done so, except the occasion when he was injured. The ordinary passenger boards the train at the depot, but the railway mail clerks were permitted to board the postal car at the express platform, and the practice, in that respect, had become so well established at the time of the plaintiff's injury that the employés of the post office and the clerks in the railway mail service knew it, and the officers and agents of the defendant also knew or were bound to know it. During the fourteen years these clerks had been running on the defendant's road only three instances are shown where this practice was departed from, two within the experience of Mr. Connor, and the occasion when the plaintiff was injured; although the plaintiff, as I have already said, in a general way, speaks of boarding his car wherever he could find it, and of other clerks doing the same thing. The railway mail clerks might get on the car in the depot after it was attached to the train, but there was no practice or usage which would justify them in getting on the car at any point outside of the depot other than at the express platform. The evidence fails to show any practice or usage which would put the defendant on notice that the plaintiff was in the car at the time he was injured. It was suggested by counsel that there is evidence tending to show that the railway mail clerks were always, or, at least, as a rule, in their cars at about 6 o'clock in the evening, and that, therefore, the defendant was put upon notice that the plaintiff was in this car at the time of the accident. But the evidence also shows that always, or as a rule, they got into their cars at the express platform, while on this occasion the plaintiff waited at the depot for the train from the north, to which this car was attached, and that as soon as it stopped he boarded the car before the train was dismembered or this car taken from it, and that he remained in it while it was being switched over the yard for the purpose of being gassed, iced, and prepared for the train to which it was to be attached, more than two hours later, and, in the absence of any evidence showing that the officers and servants of the defendant had actual knowledge that he was in the car, it cannot be presumed, from any practice or usage shown by the evidence, that the defendant had such knowledge. This car, because of the accident, never reached the express platform, but the one substituted for it was taken there, and the plaintiff boarded it there, and went out with the train. At the trial the court was of opinion that there was no evidence showing, or tending to show, that the plaintiff was rightfully on the car, in the line of his duty, at the time of the accident, and that his relation to the defendant was not that of a passenger, but that of a trespasser, and that the defendant owed him no duty the nonperformance of which would constitute negligence, and the jury was therefore instructed to return a verdict for the defendant, and, being still of that opinion, the motion for a new trial will be overruled." The motion for a new trial having been denied, judgment was duly entered upon the verdict, and thereupon this writ of error was sued out.

Harlan Cleveland, for plaintiff in error.

Lawrence Maxwell, Jr., for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, Ditrict Judge.

CLARK, District Judge, after stating the case as above, delivered the opinion of the court.

The ruling of the court, on motion to direct a verdict in favor of the defendant, is assigned for error, and presents the single question on which the case is here for re-examination. It is well settled, and not controverted, that a person must be expressly or impliedly received as a passenger before the carrier comes under obligation to exercise towards such person that high degree of care and caution for his safety which is due from the carrier to the passenger. The relation between carrier and passenger is contractual, and is created only by

contract, express or implied. Bricker v. Railroad Co., 132 Pa. 1, 18 Atl. 933; Railroad Co. v. Smith, 30 C. C. A. 58, 86 Fed. 292, 40 L. R. A. 746; Railroad Co. v. Meacham, 91 Tenn. 428, 19 S. W. 232; 5 Am. & Eng. Enc. Law (2d Ed.) 488; Brown v. Scarboro, 97 Ala. 316, 12 South. 289; Railway Co. v. Williams, 91 Tex. 255, 42 S. W. 855; Gardner v. New Haven & N. Co., 51 Conn. 143, 150; Railroad Co. v. O'Keefe, 168 Ill. 115, 48 N. E. 294; Railway Co. v. Best. 169 Ill. 301, 48 N. E. 684.

Manifestly, this obligation does not rest on the carrier with respect to one who, without the knowledge of the carrier, boards a car knowing that the car is not ready for receiving passengers, and that it is not expected or intended that it should be entered at that time or place. The contention of plaintiff in error is that there was evidence tending to show a custom or usage on the part of these mail clerks to enter the post-office car in the switch yard, or at other places where the car might be found, at the usual time of boarding the car, and that when plaintiff in error, pursuant to this custom or practice, entered the post-office car on the occasion in question he was thereby impliedly received as a passenger, in view of the custom, and the relation of carrier and passenger created. To support this contention, it is necessary for the plaintiff in error to insist (as indeed is done) that the evidence tended to show a custom so definite and well established that the railroad company might justly be charged with constructive or presumptive knowledge of the custom. It is not claimed that the evidence shows, or tends to show, positive knowledge brought home to the railroad company of the custom or practice now asserted to have existed. Nor is it urged or suggested that the defendant in error, through any officer or agent, was, in fact, aware of the presence of the plaintiff in error in the mail car at the time of or before the collision.

The difficulty to a railroad company in exercising a high degree of care towards persons on cars in motion in its switch yards, and the increased liability from obligation to do so, are so manifest that a usage or custom relied on to create the relation of carrier and passenger, and impose on the railroad company this high duty, ought, under such conditions, upon the plainest principles of justice, to be established by evidence which shows, or strongly tends to show, a well-defined, definite, and continuous practice, from which knowledge on the part of the company may be fairly inferred.

In Railroad Co. v. Cook, 13 C. C. A. 364, 66 Fed. 115, 28 L. R. A. 181, this court, speaking through Judge Lurton, in reference to a switch yard, said:

"It was the place where trains were broken up, and outgoing trains made up. Engines and cars were, from the necessities of a great business, in continual motion, backward and forward, and passing from one track to another. The business of the company, the rapidity of transportation, the success with which that business should be conducted, and the dangerous character of the work required to be there done, demanded that the business of such a yard should be surrendered to the company's own uses, free from any interference, and untrammeled by unnecessary restrictions upon the manner in which its trains should be there handled."

It is apparent that the evidence, to establish a usage or practice like that here in question, would be, for all substantial purposes, sim-

108 F.—2

ilar to that necessary to show such a use and custom as would give rise to an implied license to use the private tracks and grounds of a railroad company as a walkway or crossing. It is true there are points of difference, but the questions involved are analogous in respect of the evidence, which is sufficient to establish the custom or practice upon which the implied rights rest.

In Felton v. Aubrey, 20 C. C. A. 446, 74 Fed. 360, the question of implied license, and the evidence and use essential to establish such a license, were much considered. Judge Lurton, giving the opinion of the court in that case, said:

"The rule we deduce from the cases best reasoned and most consistent with sound public policy is this: If the evidence shows that the public had for a long period of time, customarily and constantly, openly and notoriously, crossed a railway track at a place not a public highway, with the knowledge and acquiescence of the company, a license or permission by the company to all persons to cross the track at that point may be presumed. Barry v. Railroad Co., 92 N. Y. 289; Byrne v. Same, 104 N. Y. 362, 10 N. E. 539; Railroad Co. v. White, 84 Va. 498, 5 S. E. 573; Davis v. Railway Co., 58 Wis. 646, 17 N. W. 406; Hooker v. Railroad Co., 76 Wis. 542, 44 N. W. 1085; Troy v. Railroad Co., 99 N. C. 298, 6 S. E. 77; Railway Co. v. Phillips, 112 Ind. 59–67, 13 N. E. 132; Palmer v. Railroad Co., 112 Ind. 250–261, 14 N. E. 70; Hargreaves v. Deacon, 25 Mich. 1. Persons availing themselves of such an implied license would not be trespassers, and the railroad company would come under a duty in respect to such licensees to exercise reasonable care in the movement of its trains at points where it was bound to anticipate their presence. To establish such an implied license, it is essential that the use shall have been definite, long, open, and continuous. The mere fact that a railway track is frequently used as a walkway, or frequently crossed, and that no active steps were taken to stop them, would not justify the presumption of a license. The cases we have cited in support of the rule stated abundantly support this limitation. The practice of crossing this railway track at random, or walking upon it, should not be encouraged; and when one injured seeks to show that he was not a trespasser, and relies upon an implied license, he should be required to make out the license clearly."

This is the general doctrine of the adjudged cases. 27 Am. & Eng. Enc. Law, 740–744; Park v. Viernow, 16 Mo. App. 383.

The witness Connor is very clear and positive in the statement that, throughout the four years during which he had been on this run prior to the accident, the regularly established place for stationing the mail car for the reception of mail matter and the clerks had been at this express station. And plaintiff in error admits that this is so, though the fact is stated less positively, if not reluctantly, his exact language being: "The car should at that particular time stand over on what they call the 'Buck Track,' north of the express warehouse." It being shown by the plaintiff's own evidence that the regular place for receiving these mail clerks as passengers was at the express station, the difficulty attending an effort to show a usage or custom of entering the car at other places, or wherever it might be found, might be easily anticipated. And that this difficulty was recognized is entirely apparent throughout the plaintiff's own testimony, which is exceedingly indefinite, meager, and unsatisfactory in all of the particular statements cited as tending to show the practice or usage relied on to sustain the theory on which the action proceeded. No place at which the mail car was customarily or constantly boarded is mentioned or sug-

gested more definitely than the statement that it was wherever the car might be found. There is not a suggestion of any place at which the car was generally or frequently found other than the express station. If it were conceded that the evidence tended to show a practice sufficiently definite, long, or continuous to charge the carrier with constructive knowledge and acquiescence, it would still remain a question on this record whether such usage or practice could be extended to include a case like that with which we are dealing here, where the mail clerk boarded the train immediately on its arrival in the depot at the end of the trip or run, and before the mail car had been cut out or separated from the train, or moved to any place in the yards for the purpose of being furnished and prepared for another trip, and when it would seem that any person of ordinary intelligence must have known it was not intended or expected that passengers were entering the car for the purpose of going on a trip in the opposite direction. We merely suggest this phase of the case in passing, however, as we prefer to determine the larger question, and dispose of the case upon the broader ground, on which the discussion proceeded in this court and in the court below. And without extending this opinion further, or discussing the facts more in detail, it is sufficient to say that, from a careful study of the evidence found in the record, we are brought to the conclusion that the circuit court rightly directed a verdict in favor of the defendant. We conclude that there was no substantial evidence tending to show such a custom or practice as would have justified the jury in finding that the plaintiff in error had been impliedly received as a passenger, and without which it is not insisted. and, indeed, could not be, that the defendant was chargeable with the breach of any duty towards plaintiff in error. The law will not imply a contract by a railroad company to assume responsibilities for one as a passenger from such facts as are disclosed by the record in this case. Judgment affirmed.